**Reuben POINDEXTER, Plaintiff,**

v.

**NORTHROP CORPORATION, a Delaware corporation, Defendant.**

No. 89 C 1669.

United States District Court, N.D. Illinois, E.D.

Jan. 17, 1990.

Alan H. Slodki, Alan H. Slodki & Associates, Ltd., Chicago, Ill., for plaintiff.

James D. Fiffer, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This case is an employment discrimination dispute between plaintiff Reuben Poindexter and defendant Northrop Corporation. In Count I, Poindexter seeks relief from Northrop's alleged violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"). In Count II, Poindexter alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Northrop moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the basis that Poindexter had not timely filed charges with the Equal Employment Opportunity Commission ("EEOC"). On August 11, 1989, the Court denied defendant's 12(b)(1) motion and converted the 12(b)(6) motion into a motion for summary judgment pursuant to Fed.R. Civ.P. 56. For the reasons set forth below, Northrop's motion for summary judgment is denied.

### II. FACTS

Poindexter, a black male who was 42 years old at the time, applied to Northrop on January 16, 1987, for the positions of Technician/Drafter and Inspector/Assembler. On January 20, 1987, Northrop sent Poindexter a letter which stated:

> Thank you for your recent inquiry regarding employment opportunities with Northrop Defense Systems Division.
>
> Your qualifications have been reviewed by our staff and we find that we do not have a suitable position available to best utilize your talents at this time.
>
> We will retain information regarding your qualifications in our active files for one year. Should a position become available which would seem to suit your background and capabilities, we will contact you.
>
> Thank you for your interest in Northrop Defense Systems Division.

In July, 1987, Poindexter allegedly called Northrop's employment office and was told that he did not need to reapply because his application was still in the active file.

On April 20, 1988, Poindexter filed a charge with the EEOC alleging age and race discrimination. On November 18, 1988, the EEOC issued a determination as to the merits of Poindexter's claims. At that time, Poindexter also received notice of his right to sue in federal court. Poindexter filed this lawsuit on February 28, 1989. Northrop moved to dismiss, arguing that Poindexter's EEOC charge was untimely, having been filed more than 300 days after January 20, 1987. Poindexter

responded that the charge was timely because the discrimination occurred on January 20, 1988, rather than January 20, 1987.

## III.  ANALYSIS

### A.  Introduction

Northrop argues that the ADEA claim is time-barred pursuant to 29 U.S.C. § 626(d)(2) [1] and that the Title VII claim is time-barred pursuant to 42 U.S.C. § 2000e–5(e) [2]. Specifically, Northrop contends that Poindexter did not file his EEOC charge within 300 days of the alleged discrimination.[3] In order to determine whether Poindexter's claim is timely, the Court must determine when the alleged act of discrimination occurred. Because 300 days prior to the April 20, 1988 filing of the EEOC charge was June 25, 1987, Poindexter's charge was timely filed if the discrimination occurred subsequent to June 25, 1987. Northrop contends that the January 20, 1987 letter should commence the limitations period. Poindexter, on the other hand, urges that the period should commence on January 20, 1988. Poindexter relies on Northrop's statement in its January 20, 1987 letter that it would retain information regarding Poindexter's qualifications in its active files for one year, and he argues that Northrop's act of removing his application from its file in January 1988 after holding it for one year is the act which triggered the 300–day limitations period.

### B.  Timeliness Issues In Difficult Cases

Courts have grappled with many difficult issues relating to the determination of whether allegedly discriminatory conduct by an employer has occurred within the necessary period of time prior to a plaintiff's filing of an EEOC charge. Where the plaintiff solely challenges allegedly discriminatory conduct which occurred within the 300 days prior to the date he filed an EEOC charge, resolution of the timeliness question is easy: the claim is not time-barred. A number of other situations arise, however, where resolution of the

1.  In pertinent part, 29 U.S.C. § 626(d) provides:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—
> (1) within 180 days after the alleged unlawful practice occurred; or
> (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier....

Section 633(b) provides in relevant part:
> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated....

2.  42 U.S.C. § 2000e–5(e) provides in pertinent part:
> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice oc-

curred ... *except* that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved *within three hundred days after the alleged unlawful employment practice occurred,* or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier....
(Emphasis supplied.)

3.  Under Title VII, the limitations period for filing with the EEOC is 180 days in states without their own agencies to which employment discrimination complaints can be directed. 42 U.S.C. § 2000e–5(e). *See supra* at n. 2. In "deferral" states such as Illinois, which have agencies with authority to administer these complaints, the period is extended to 300 days. *Gilardi v. Schroeder,* 833 F.2d 1226, 1230 (7th Cir.1987). Similarly, under the ADEA, Illinois is considered a deferral state because it has an appropriate state agency. Therefore, a charge must be filed with the EEOC within 300 days of the alleged unlawful practice. *Schroeder v. Copley Newspaper,* 879 F.2d 266, 269 (7th Cir. 1989).

timeliness issue is more difficult.[4] These situations fall into at least four different categories, which are addressed individually below.

### 1. Effects Of Prior Conduct

The first situation is where a plaintiff complains of allegedly discriminatory effects caused by earlier conduct. This situation was addressed by the Supreme Court in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977),[5] and *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).[6] The Court concluded that a plaintiff may not sue solely to remedy the present effects of past discrimination; *i.e.*, a plaintiff may not challenge solely the effects occurring within the limitations period of conduct occurring prior to the limitations period. *See Ricks*, 449 U.S. at 257–58, 101 S.Ct. at 504; *Evans*, 431 U.S. at 558, 97 S.Ct. at 1889. The proper focus is on the discriminatory acts themselves, not on their consequences. *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504.

Accordingly, the plaintiff must demonstrate the existence of a present violation—allegedly discriminatory conduct which occurred within the limitations period. *Ricks*, 449 U.S. at 257–58, 101 S.Ct. at 504;

*Evans*, 431 U.S. at 558, 97 S.Ct. at 1889. *See also Young v. Will County Dept. of Public Aid*, 882 F.2d 290, 292 (7th Cir. 1989); *Nazaire v. Trans World Airlines, Inc.*, 807 F.2d 1372, 1376 (7th Cir.1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987). Without a showing of a present violation, there can be no recovery. *Stewart v. CPC International, Inc.*, 679 F.2d 117, 120 (7th Cir.1982). Thus, the "plaintiff must demonstrate that the acts of alleged discrimination are part of an ongoing pattern of discrimination and that at least one of the alleged discrete acts of discrimination occurred within the relevant limitations period." *Young*, 882 F.2d at 292. *See also Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989).

If the only events within the limitations period were the "delayed, but inevitable, consequence[s]" of acts committed prior to the limitations period, the plaintiff's claim is barred. *Ricks*, 449 U.S. at 257–58, 101 S.Ct. at 504. A plaintiff cannot assert a claim "that is wholly dependent on discriminatory conduct occurring well outside the period of limitations." *Lorance v. AT & T Technologies, Inc.*, —— U.S. ——, 109 S.Ct. 2261, 2267, 104 L.Ed.2d 961 (1989).[7]

---

**4.** The term "continuing violation" has, at times, been applied to any or all of these situations. At other times, these situations may be analyzed simply in terms of whether they fit within the general rule that the charge must be filed within 300 days of the discrimination, or in terms of whether the limitations period has been "tolled." Because the terms "continuing violation" and "tolling of the limitations period" have been used rather loosely and ambiguously in the case law, the Court does not find them particularly helpful.

**5.** In *Evans*, the plaintiff had been dismissed in 1968, allegedly for discriminatory reasons. Her employer subsequently rehired her but did not give her seniority credit for her earlier service. Although the plaintiff conceded that she was barred from challenging the dismissal itself, she contended that she could maintain a Title VII challenge because the seniority system gave present effect to a past act of discrimination. The Court concluded that "a challenge to a neutral system may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit, even if the past event might have

justified a valid claim against the employer." 431 U.S. at 560, 97 S.Ct. at 1890.

**6.** In *Ricks*, a college professor had been denied tenure but had been given a one-year "terminal contract," at the expiration of which his employment would end. The Court held that the limitations period began to run at the time the tenure decision was made and communicated to the plaintiff rather than at the expiration of the terminal contract. 449 U.S. at 259, 101 S.Ct. at 504. *See also Mull v. Arco Durethene Plastics, Inc.*, 784 F.2d 284 (7th Cir.1986) (applying *Ricks* analysis and holding that the limitations period begins to run when the employee receives notice of termination, not when the termination becomes effective or when the employee finally accepts it as inevitable).

**7.** In *Lorance*, the plaintiffs filed a Title VII claim against their employer alleging that the purpose of a seniority system was discrimination against women by alteration of their seniority status. Although the seniority system was adopted in 1979, the plaintiffs, who were not demoted until 1982, did not file their EEOC charge until 1983. The Court held that the

■ On the other hand, once a present violation is demonstrated, retroactive relief may be proper. *Stewart*, 679 F.2d at 120, citing *Evans*, 431 U.S. at 558–59, 97 S.Ct. at 1889. If the plaintiff proves that a violation occurred within the limitations period, that the violation began prior to the limitations period,[8] and that the earlier manifestation of the violation caused additional injury beyond the injury stemming from the conduct occurring within the limitations period, then the plaintiff may obtain a remedy for that additional injury. *Malhotra*, 885 F.2d at 1310.

### 2. Awareness Of Discrimination

In *Stewart, supra,* the court recognized that there are at least three types of situations loosely termed "continuing violation" theories other than the one described above. 679 F.2d at 120. *See also Nazaire, supra,* 807 F.2d at 1377–78. In the first of these three situations, the limitations period does not begin to run immediately upon the occurrence of the discriminatory conduct because the employee or prospective employee did not know, and could not be expected to know, immediately that the discrimination had occurred. In this circumstance, the limitations period begins to run "when the employee knew or should have known that he or she was discriminated against. This rule is applied in cases, usually involving hiring or promotion practices, where the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the 'violation' occurred." *Stewart*, 679 F.2d at 120, citing *Ricks, supra,* 449 U.S. 250, 101 S.Ct. 498, and *Cedeck v. Hamiltonian Federal Savings & Loan Ass'n,* 551 F.2d 1136 (8th Cir.1977).

In *Wislocki–Goin v. Mears,* 831 F.2d 1374 (7th Cir.1987), *cert. denied,* 485 U.S. 936, 108 S.Ct. 1113, 99 L.Ed.2d 274 (1988), the plaintiff challenged her failure to be hired for a teaching position at a jail. The court held that the limitations period for filing an EEOC charge began when the plaintiff discovered that another person had received the job. The court found that as of that date, the plaintiff knew or should have known that she would not receive the job. 831 F.2d at 1380–81. Although the court did not expressly consider plaintiff's situation as one which constituted a "continuing violation" problem, the court's approach is consistent with the observations made in *Stewart* concerning failures to hire or promote.

### 3. Express Policy Which Is Discriminatory

■ The second of the three categories recognized in *Stewart* is where "the employer's express, openly espoused policy [is] alleged to be discriminatory." *Stewart*, 679 F.2d at 121, citing *Bartmess v. Drewrys USA, Inc.,* 444 F.2d 1186 (7th Cir.), *cert. denied,* 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971). For example, in *Bartmess* the employer required women to retire at age 62 and required men to retire at age 65. If the express policy was in place and was applicable to the plaintiff when the discrimination charge was filed, that charge will be considered timely regardless of when the policy was adopted. *See Stewart,* 679 F.2d at 121.

### 4. Covert Discrimination

The third category recognized by *Stewart* is where "the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy.... In such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory, acts." 679 F.2d at 121. In this circum-

---

plaintiffs' complaint was time-barred because the only discriminatory act which can be alleged as to a facially neutral seniority system is the system's adoption. 109 S.Ct. at 2268–2269.

**8.** A violation began before the limitations period if "it would have been unreasonable to require the plaintiff to sue separately" on each violation of a series of violations. "[O]rdinarily this will be because the plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory mistreatment." *Malhotra,* 885 F.2d at 1310.

stance, the plaintiff must still show a "present violation:"

Although *Evans* does not speak directly to this brand of continuing-violation theory, the Supreme Court's emphasis upon the need to show a present violation of Title VII indicates that an employer may be held liable for a continuing practice of discrimination *if* the plaintiff can demonstrate that the practice has actually continued into the "present"—that is, into the time period relevant to the date the charge of discrimination was filed. At least one discriminatory act must have occurred within the charge-filing period.

*Id.* Similarly, if the plaintiff knew or should have known of the alleged discrimination before the limitations period began, his or her claim will be barred. *See Nazaire*, 807 F.2d at 1378–79.

*C. Application To This Case*

■ Poindexter's complaint falls most neatly within the second category described above. Although arguments could perhaps be made with respect to the first and fourth categories, the Court will not consider those categories because of its conclusion with respect to the second category.[9]

Poindexter challenges a failure to hire. Because Northrop never expressly rejected his application, it is difficult, if not impossible, to determine an exact date when the alleged act of discrimination occurred. To use the January 20, 1987 letter as the trigger for the limitations period is unworkable because the letter expressly stated that Poindexter had *not* been rejected; it held out hope that he would still be hired. For all Poindexter knew, a position would open up within the next week or month. To file a charge at that point would have been premature, unless the particular circumstances surrounding the issuance of the letter made Poindexter aware of the discriminatory conduct which he now alleges.

The same considerations also apply to the July, 1987 telephone call, in which Poindexter was again told that he had not been rejected but that there was still a possibility that he would be hired in the future.

The Court finds that Poindexter has a colorable argument that January 20, 1988 is the date on which the limitations period began. On that date, the application was removed from Northrop's active file, and Poindexter may reasonably argue that only then could he reasonably have been expected to be aware of the allegedly discriminatory conduct. Unlike *Ricks*, on which Northrop relies, Northrop's failure to hire Poindexter during the year after the January 20, 1987 letter was not a "delayed, but inevitable, consequence" of that letter.

An analogous situation arose in the case of *Smallwood v. United Air Lines, Inc.*, 661 F.2d 303, 309 (4th Cir.1981), *cert. denied*, 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302 (1982). In *Smallwood*, a 48–year–old pilot brought an ADEA claim against an airline for its refusal to hire him. In response to his application for employment, the pilot had received a form letter which stated that the airline could not offer "immediate encouragement" but also stated that the pilot's application would be retained on file for possible future consideration. After several months, the pilot received a second letter which stated that the airline was only considering the applications of persons between the ages of 21 and 35. The court found it significant that the first letter did not unequivocally notify the pilot that he would not be hired. Thus, the court found that the second letter triggered the commencement of limitations period and held that the pilot's ADEA was not time-barred. 661 F.2d at 309. Although the court analyzed the issue in terms of determining when the act of discrimination occurred, rather than in terms of a "continuing violation," the case presents the type of situation contem-

9. For example, it may be possible to view Northrop's conduct as a continuing series of discriminatory acts, with each day on which Poindexter was not hired constituting an additional act. Under this theory, Poindexter could sue for those discriminatory acts which occurred during the 300 days before his EEOC charge was filed, and perhaps, under the covert discrimination approach described *supra* at 1366–67, could also sue for the failures to hire which occurred prior to that time.

plated in *Stewart* where it is difficult to pinpoint when the alleged discrimination occurred and where the court relies on the date when the plaintiff knew or should have known of the alleged discrimination.

This case differs from *Smallwood* only in that Poindexter never received a letter which unequivocally rejected his application. While the existence of such a letter made it easier to locate a specific date in *Smallwood,* the Court finds the distinction ultimately immaterial. When Poindexter received the January 20, 1987 letter, he was in the same situation that Smallwood was in when he received the letter which did not offer him "immediate encouragement." To find that Poindexter's limitations period began to run at that point would be inconsistent with *Smallwood's* holding that the limitations period did not yet begin to run because the letter was not an unequivocal rejection. The same holds true for the July, 1987 phone call which Poindexter received. Northrop should not be rewarded (and Poindexter penalized) simply because Northrop did not send Poindexter a letter at the end of the one-year period stating that Poindexter's application was being rejected.[10]

 Finally, the Court notes that "[a]ll doubts on jurisdictional timeliness are to be resolved in favor of trial." *Young, supra,* 882 F.2d at 292. Whether Poindexter in fact did not have reason to know of the alleged discrimination until January 20, 1988 is an issue appropriately left for trial. At this point, the Court finds that Northrop has not demonstrated, as a matter of law,

that Poindexter knew or should have known of the alleged discrimination more than 300 days before he filed his EEOC charge. Northrop, therefore, has not demonstrated an entitlement to summary judgment on the ground that plaintiff's claim is time-barred.[11]

## IV. CONCLUSION

Because the Court cannot conclude as a matter of law that Poindexter's EEOC filing was untimely, Northrop's motion for summary judgment is denied.

---

10. Of course, Northrop may argue that Poindexter's application was never actually "rejected;" that he would have been hired but that an opening simply never materialized. This argument, however, goes to the merits of Poindexter's discrimination claim and does not effect the limitations issue.

11. Poindexter argues alternatively that his claim was timely because Northrop's conduct misled him and induced him not to act, making equitable tolling or estoppel appropriate. *See generally Mull v. Arco Durethene Plastics, Inc.,* 784 F.2d 284, 290–92 (7th Cir.1986). The Court does not reach this alternative argument.

Northrop raises the additional argument that Poindexter should be estopped from alleging

that his EEOC charge was timely. Northrop relies on a Charge Receipt Affidavit prepared at the EEOC in which Poindexter stated, "I insist on filing this charge although it's over 300 days from my date of harm." Northrop also points out that on his EEOC charge, Poindexter listed "1–20–87" as the "date most recent or continuing discrimination took place." The Court declines to bind Poindexter to statements concerning legal conclusions as to the date of discrimination or harm which he made before this lawsuit was filed and which he was not qualified to make. *Cf. Matter of Cassidy,* 892 F.2d 637, (7th Cir.1990) (describing doctrine of judicial estoppel).