On February 18, 1994, Willard Z. Perry, Gerald H. Wise and Robert L. Groves ("complainants") filed "charge" affidavits with the Ohio Civil Rights Commission ("commission") wherein they alleged their former employer, Lennox Industries, Inc. ("Lennox"), discriminated against them on the basis of their ages. After investigating the matter and finding probable cause, the commission issued three complaints alleging Lennox denied transfers to complainants because of their ages.
On April 17, 1996, Lennox filed a motion to dismiss contending the commission lacked jurisdiction because the charges were untimely filed. On May 28, 1996, a hearing examiner denied Lennox's motion to dismiss. A hearing was held before a hearing examiner. On October 31, 1997, the hearing examiner issued findings of facts, conclusions of law and recommendations. The hearing examiner found, in part, as follows. In 1993, Lennox operated a manufacturing plant in Columbus, Ohio, and produced residential and commercial cooling systems. In May 1993, Mr. Perry was 53 years old and had been working at Lennox for 34 years, Mr. Wise was 49 years old and had been working at Lennox for 27 years, and Mr. Groves was 50 years old and had been working at Lennox for 27 years. Mr. Perry, Mr. Wise and Mr. Groves had been production supervisors for 17, 5 and 20 years, respectively.
On May 7, 1993, Lennox advised its employees that it would be closing its Columbus plant and consolidating its operations at a facility in Marshalltown, Iowa. Lennox anticipated that there would be a need to transfer some of the Columbus employees to Marshalltown. On May 8, 1993, Lennox held a meeting in order to decide which Columbus employees would be offered transfers to Marshalltown. Lennox considered all of the Columbus production supervisors as potential transferees. Each production supervisor was rated 1, 2 or 3, with 1 being the highest rating.
Based upon these ratings, 10 persons were offered transfers. One such person was 49 years old and another, Tommy Jarrell, was 55 years old. Mr. Jarrell received the same rating as the complainants, the lowest rating; however, he was offered a transfer because he was the only person with copper fabrication experience. The remaining eight persons offered transfers were all younger than the complainants, and six of these persons were below the age of 40.
The hearing examiner concluded that the alleged discriminatory act was the failure to transfer complainants to Marshalltown. The hearing examiner concluded that the commission met its burden of establishing a prima facie case of discrimination, Lennox articulated legitimate, nondiscriminatory reasons for its actions, and the commission met its burden of showing that the actual reason for Lennox's action was discriminatory in nature.
On January 29, 1998, the commission issued a final order incorporating the hearing examiner's report in full. On February 24, 1998, Lennox appealed to the Franklin County Court of Common Pleas. On January 27, 1999, the common pleas court rendered a decision. The court affirmed the commission's finding of age discrimination and reversed the commission's order regarding the award of front pay, indicating that such award should have been limited to three years from the date of their layoffs. A judgment entry was journalized on February 24, 1999. Lennox (hereinafter "appellant") has appealed to this court, assigning the following as error:
First Assignment of Error:
 The Court of Common Pleas erred as a matter of law when it held that complainants' age discrimination claims were not barred the Ohio age discrimination statute of limitations.
 Second Assignment of Error:
 The Court of Common Pleas erred as a matter of law when it held that the complainants met their burden of proving that they were not selected for transfer offers due to age discrimination.
In its first assignment of error, appellant contends the common pleas court erred in concluding the claims were not time-barred. R.C. 4112.05(B)(1) states, in pertinent part:
 Any person may file a charge with the commission alleging that another person has engaged or is engaging in an unlawful discriminatory practice. * * * [T]he charge * * * shall be filed with the commission within six months after the alleged unlawful discriminatory practice was committed.
Appellant asserts that the complainants were notified in writing within days of the May 8, 1993 meeting that they had not been selected for transfer offers. Appellant also points out that it was undisputed that the complainants were aware at that time that several of the persons offered transfers were under the age of 40. Therefore, appellant contends that the charges filed with the commission ("appellee") on February 18, 1994 were untimely as they were not filed within six months of the May 1993 notice.
As indicated above, appellant had filed a motion to dismiss the charges as being untimely. The hearing examiner denied this motion, finding there was a possibility that complainants could have been offered employment after the May 1993 notice, and the earliest date the statute began to run was September 1993. Hence, the charges were timely filed in February 1994. The common pleas court essentially agreed with the hearing examiner's review of the relevant case law and found the decision was supported by reliable, probative and substantial evidence. For the reasons that follow, we affirm the common pleas court's conclusion that the charges were filed within the applicable statute of limitations.
We note first that federal caselaw interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112. Plumbers Steamfitters Commt. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192,196. The leading case setting forth the general analysis to be applied when determining whether a discrimination charge has been timely filed is Delaware State College v. Ricks
(1980), 449 U.S. 250, 101 S.Ct. 498. In order to determine the timeliness of a charge, the court must identify precisely the unlawful employment practice. 449 U.S. at 257. In Ricks, the plaintiff was denied tenure and on June 26, 1974, the college trustees told the plaintiff, in conformance with the policy regarding junior faculty members who are denied tenure, that he would be offered a one-year terminal contract which expired on June 30, 1975. Id. at 252-253. The plaintiff argued the limitations period began to run when the terminal contract expired. However, the Supreme Court noted that the complaint did not allege discriminatory discharge, rather, it alleged denial of tenure. Id. at 257-258.
The Supreme Court stated that mere continuity of employment, without more, is insufficient to prolong the life of an employment discrimination claim. Id. at 257. The proper focus is upon the time of the discriminatory act, not the time at which the consequences of the act become the most painful (i.e. when employment actually terminates). Id. at 258. In Ricks, the only alleged discrimination occurred, and the statute of limitations began to run, at the time the tenure decision was made and communicated to the plaintiff. Id. The Supreme Court noted that discrimination complaints can present widely varying circumstances, and application of the general principles set forth in the opinion necessarily must be made on a case-by-case basis.Id. at fn. 9.
The Supreme Court of Ohio addressed Ricks in Bd. of Edn.v. Civil Rights Comm. (1981), 66 Ohio St.2d 252 ("Lordstown"). InLordstown, the plaintiffs alleged the nonrenewal of their teaching contracts was discriminatory. The plaintiffs were informed of such nonrenewal in April 1975, but their contracts did not expire until August 31, 1975. Id. at 254. The Supreme Court of Ohio distinguished Ricks, recognizing that in Ricks the discriminatory act was the denial of tenure while the discriminatory act before it was the nonrenewal of teaching contracts. Id. at 255. The Supreme Court of Ohio held that the statute of limitations began to run when the teaching contracts expired. Id. at paragraph one of the syllabus. In so holding, the Supreme Court of Ohio quotedState ex. rel. Local Union 377 v. Youngstown (1977), 50 Ohio St.2d 200,203-204:
 `Normally, a cause of action does not accrue until such time as the infringement of a right arises. It is at this point that the time within which a cause of action is to be commenced begins to run. The time runs forward from that date, not in the opposite direction, and thus when one's conduct is not presently injurious a statute of limitations begins to run against an action for consequential injuries resulting from such act only from the time that actual damage ensues.' Lordstown at 256.
The Supreme Court of Ohio concluded that the final discriminatory act occurred on August 31, 1975 when the teaching contracts expired, and the plaintiffs' employment terminated. Id. The Supreme Court affirmed its ruling in Lordstown in CincinnatiMetro. Hous. Auth. v. State Emp. Relations Bd. (1990), 53 Ohio St.3d 221,226-227. Based on the holding in Lordstown, the Supreme Court of Ohio stated that a statute of limitations begins to run when an unlawful act occurs, not upon advance notice of such act. Id. at 227.
In the case at bar, the unlawful employment practice complained of was, in essence, the failure of appellant to offer transfers to complainants. Appellant asserts that the complainants were given notice of such in May 1993. Indeed, during the week of May 7, 1993, complainants learned that eleven production supervisors were offered transfers, and some of these persons were younger than the complainants. On May 14, 1993, complainants were given written notices that stated their positions were being eliminated as a result of the closing of the Columbus facility. Under Ricks, it could be argued that the statute of limitations began to run in May 1993, when appellant made the initial decision on who would be offered transfers, and such decision did not include complainants. However, and as indicated above, the hearing examiner found there was a possibility that complainants could be offered transfers even after the initial transfer offers were made and, therefore, the statute of limitations did not begin to run in May 1993.
In Zebedeo v. Martin E. Segal Comp., Inc. (1984),582 F. Supp. 1394, 1411, the district court, citing Ricks, stated that the statute of limitations period begins to run at the time the decision to terminate is made and communicated to the grievant. However, notice of the employer's intent to terminate the Zebedeo
plaintiff was "clouded * * * by the ambiguous verbal intimations" of the employer that the plaintiff might be transferred rather than terminated. Id. The court noted that under similar equivocal circumstances, courts have required an explicit letter of termination as the triggering event for commencement of the statute of limitations. Id.
In Poindexter v. Northrop Corp. (1990),728 F. Supp. 1362, 1365, citing Ricks, the court stated that the focus is on the discriminatory acts themselves, not the consequences of such acts. The court stated that the plaintiff had to demonstrate the existence of discriminatory conduct occurring within the limitations period. Id. See, also, Berarducci v. Oscar MayerFoods Corp. (Aug. 17, 1984), Erie App. No. E-84-2, unreported, at 8-9 (an age discrimination claim accrues when the discriminatory act or practice occurs, not when adverse consequences or other facts resulting therefrom manifest themselves). If the only events within the period were the delayed but inevitable consequences of acts committed prior to the limitations period, the claim is time-barred. Poindexter at 1365.
In the case at bar, the hearing examiner found the following. On May 12, 1993, Mr. Groves had a meeting with Steve Wolfe, a member of appellant's human resources department, in order to find out why he was not considered for a transfer. Mr. Groves and Mr. Wolfe discussed Mr. Grove's qualifications and the selection process. On May 14, 1993, Mr. Groves learned that three production supervisors turned down offers to relocate to Marshalltown, and those positions had not been offered to anyone else.
In June 1993, a memorandum written by appellant's vice-president of manufacturing was widely circulated throughout the plant, and complainants were aware of its contents. The memorandum contained organizational charts for the Marshalltown facility. The chart for the production department indicated that there were five production supervisor positions open in "heating" and ten production supervisor positions open in "cooling." The chart also contained a list of production supervisors to be assigned. All seven of the persons listed were employed by appellant in Columbus, and six of the seven were younger than the complainants.
Sometime after July 4, 1993, Mr. Wise was told by his immediate supervisor that there would be additional offers for transfers and other openings for production supervisors in Marshalltown. After June 7, 1993, appellant continued to offer transfers to production supervisors at the Columbus facility. In September 1993, Edwin Bickar, age 46, was offered a position. Mr. Groves was considered for a production supervisor position in Marshalltown and was interviewed in November 1993. Throughout this period, the complainants met periodically to discuss their experiences and incidents they had heard about which related to the plant closing and the transfer of employees, including production supervisors.
Based on these facts, the common pleas court did not err as a matter of law in affirming the hearing examiner's determination that the charges were timely filed. There was a possibility that other transfer offers would be made. It cannot be said, as stated in Poindexter, that after the May 1993 notice letters, the complainants' terminations were inevitable. We note that the alleged discriminatory acts here were the denials of transfer. The complainants may have been told expressly on May 14, 1993 that their positions were being eliminated; however, whether or not they would be offered transfers was uncertain. Hence, the discriminatory act complained of — the continued failure to offer transfers — occurred within the limitations period. See Anderson v.Zubieta (1999), 180 F.3d 329, 336 (distinguishing Ricks from a situation where plaintiffs seek relief not for the employer's initial announcement of a discriminatory policy, but for the employer's continued application of such policy). Therefore, the charges were timely filed.
Accordingly, appellant's first assignment of error is overruled.
In its second assignment of error, appellant contends the common pleas court erred in finding appellee met its burden of proving age discrimination. The common pleas court must affirm a finding of discrimination under R.C. Chapter 4112 if the finding is supported by reliable, probative and substantial evidence.Ohio Civ. Rights Comm. v. Case W. Res. Univ. (1996), 76 Ohio St.3d 168,177. The role of this court is more limited. An appellate court determines whether the common pleas court abused its discretion in finding there was reliable, probative and substantial evidence to support appellee's order. Id. A common pleas court abuses its discretion when its decision is clearly erroneous, i.e., when it misapplies the law to undisputed facts.Id.
Both the hearing examiner and the common pleas court found appellee failed to set forth direct evidence of age discrimination. Therefore, the general framework as set forth inMcDonnell Douglas Corp. v. Green (1973), 411 U.S. 792 is applicable to the determination of whether discrimination was shown. See Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501,504-505. In order to establish a prima facie case of age discrimination, the employee must demonstrate (1) that he or she was a member of the statutorily-protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or the discharge permitted the retention of, a person not belonging to the protected class. Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578,582. The employer then may overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for the employee's discharge. Id. The employee then must show that the reason articulated by the employer was only a pretext for unlawful discrimination. Id.
The case at bar can be considered a reduction-in-force situation. Therefore, the analysis is slightly different from theMcDonnell Douglas framework. The prima facie case is established by showing (1) the employee is within the statutorily-protected class, (2) the employee was qualified for the position, (3) the employee was discharged, and (4) additional direct, circumstantial or statistical evidence tending to indicate the employer singled out the employee for discharge for impermissible reasons.Ercegovich v. Goodyear Tire Rubber Company (1998),154 F.3d 344, 350. A plaintiff satisfies the fourth prong by demonstrating that a comparable, non-protected person was treated better. Id.
We take the following facts, which the common pleas court accepted in essence, directly from the hearing examiner's report. On May 8, 1993, a meeting was held in order to determine which Columbus employees would be offered transfers to Marshalltown. This meeting was attended by John Ireland, the Columbus production manager, Bob Peterson, the Columbus plant manager, Tom Delaney, the Columbus human resources manager, Steve Wolfe and Bill Cors, appellant's corporate human resources representatives, Tim DeHaan, the Marshalltown plant manager, and Harry Bizios, vice-president of manufacturing.
All Columbus production supervisors were considered as potential transferees. Mr. Ireland, Mr. Delaney and Mr. Peterson rated each production supervisor on a scale from 1 to 3, with 1 being the highest rating. The ratings were supposed to be based on each candidate's people skills, communication skills, job knowledge in specific areas, and understanding of the principles of quality. Mr. Ireland presented his ratings first. The complainants were given the lowest rating, 3, by each of the raters. Hence, they were not offered transfers.
The following production supervisors were offered transfers: Joel Bagby, age 29, Terry Baughn, age 30, Karen Schuller, age 32, Carl Moore, age 35, Robert Aumiller, age 38, Scott Love, age 38, Charles Morris, age 42, Michael Ball, age 46, Dennis Powell, age 46, Michael Ditello, age 49, and Tommy Jarrell, age 55. Mr. Jarrell received the same rating as complainants; however, he was offered a transfer because he was the only person with copper fabrication experience. Subsequently, Edward Bickar, age 45, was offered a transfer.
Complainants had superior knowledge about the product, and their knowledge was better than that of many of the younger production supervisors who were offered transfers. Complainants had a good to excellent understanding of the principles of quality, and such understanding was better than that of the younger supervisors offered transfers. Complainants had good to excellent communication and people skills, and such skills were better than those of some of the younger production supervisors who were offered transfers.
Mr. Ireland, the lead decision-maker, made age-based remarks regarding transfers to Marshalltown. Specifically, Mr. Ireland commented that "maybe we need younger people in here." In addition, when asked why one of the complainants had not been offered a transfer, Mr. Ireland responded "[w]ell, we're not taking none of the old farts." A similar statement referring to "gray-haired old farts" was attributed to Mr. Ireland. Mr. Ireland denied making such statements; however, the hearing examiner found this testimony was not credible.
Appellant argues appellee failed to show discrimination was the reason the complainants were not offered transfers. However, given the above evidence, the common pleas court did not abuse its discretion in affirming appellee's order. Appellee clearly set forth a prima facie case of age discrimination. Complainants were members of the protected class, were qualified, were denied transfers and then terminated, and several non-protected persons were offered transfers. While the hearing examiner found appellant had articulated legitimate, nondiscriminatory reasons for its actions (appellant claimed complainants were in fact not qualified), the hearing examiner then concluded that appellee showed such reasons were pretext. The common pleas court did not abuse its discretion in finding this conclusion was supported by the law and by reliable, probative and substantial evidence.
In essence, the hearing examiner concluded that appellee proved its case based upon the comments made by Mr. Ireland and the evidence regarding complainants' qualifications compared to the qualifications of the younger supervisors who were offered transfers. Appellant contends the hearing examiner erroneously relied upon the testimony of co-workers and other personnel regarding complainants' qualifications. Appellant asserts that this testimony was irrelevant because complainants' qualifications were judged by supervisors, not co-workers. However, the hearing examiner specifically found that appellant's evidence regarding the qualifications of the younger supervisors was not credible. Specifically, the hearing examiner found appellant's assessment of the younger supervisors was "dishonest and insincere." Further, it is clear that the hearing examiner disbelieved appellant's stated reasons for not offering transfers to complainants.
Given the evidence, the common pleas court had to give due deference to the hearing examiner's resolution of any evidentiary conflicts, as he had the opportunity to observe the demeanor of the witnesses and weigh their credibility. SeePlumbers Steamfitters Commt., supra, at 200, citing Univ. ofCincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111-112. Therefore, the common pleas court did not err in essentially agreeing with the hearing examiner's conclusions. Based on all of the foregoing, we find the common pleas court did not abuse its discretion in affirming the commission's order.
Accordingly, appellant's second assignment of error is overruled.
Having overruled each of appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KENNEDY, J., concurs.
LAZARUS, P.J., dissents.