679 F.2d 117
 33 Fair Empl.Prac.Cas. 1680,
29 Empl. Prac. Dec. P 32,702
Robert STEWART, Plaintiff-Appellant,
v.
CPC INTERNATIONAL, INC. and Oil, Chemical and Atomic Workers
International, Local 7-507, Defendants-Appellees.
 No. 79-2255.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Feb. 5, 1982.*
Decided Feb. 16, 1982.**
 
 Robert Stewart, pro se.
 James W. Gladden, Jr., Chicago, Ill., for defendants-appellees.
 Before SPRECHER, BAUER and WOOD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Robert Stewart brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against his employer, Corn Products Company, International, Inc. ("CPC"), alleging that CPC refused to promote him into its apprenticeship training program because he is black. Stewart also named as a defendant his Union, the Oil, Chemical and Atomic Workers International Union Local 7-507, pursuant to Federal Rule of Civil Procedure 19(a)(2), contending that the Union was a party with an interest in the outcome of the case. The district court granted CPC's motion for summary judgment, denied Stewart's cross-motion for partial summary judgment, and dismissed the complaint against the Union, in an order dated September 20, 1979. Stewart appealed.
 
 I.
 
 2
 Stewart has been employed by CPC since January of 1955. He worked as a laborer until 1957, when he moved to the bag department, working as a printer's helper, a printer, a relief head pressman, and his current position, a bag department checker. Stewart charged that during his employment with CPC, the company has continuously discriminated against him on the basis of his race by excluding him from the company's electrical apprenticeship program. Specifically, Stewart claimed, he applied for admission to the program three times-in 1959, in 1971 and in 1973-and was rejected, each time for a different reason.
 
 The 1959 Rejection
 
 3
 When Stewart applied for the apprenticeship program in 1959, he was told he failed a qualifying exam. Stewart acknowledged, in his deposition, that he failed the exam. He has never raised any specific facts to show that the exam had a disproportionate impact on blacks. He did, however, raise the issue of disproportionate impact in his motion for partial summary judgment, contending that it was for the defendants to prove either job relatedness or the absence of disproportionate impact.
 
 
 4
 The district court held that the 1959 rejection could not be the subject of a Title VII claim because it occurred prior to July 2, 1965, the effective date of the statute. The court stated: "The only justification for consideration of acts of discrimination occurring prior to the enactment of Title VII is to determine whether present employment practices may, in fact, perpetuate past discrimination." However, the court concluded that Stewart could not show perpetuation of past discrimination because he neither alleged nor demonstrated that the qualifying exam had a disproportionate impact on black employees.
 
 The 1971 Rejection
 
 5
 Stewart was rejected from the apprenticeship program in 1971, according to the company, because he suffered from rheumatoid arthritis and therefore was incapable of handling the requirements of the program. Stewart contended that he did not suffer from rheumatoid arthritis and that even if he did, it would not have hindered him in completing the training program. He claimed he was rejected because of his race.
 
 
 6
 The district court found that Stewart's claim regarding the 1971 rejection was time-barred. In so finding, the court relied on the analysis it applied to the 1959 rejection and on United Air Lines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Moreover, the court held, even if the claim were not time-barred, Stewart could not demonstrate a Title VII violation because CPC's asserted reason for rejecting Stewart-that he had rheumatoid arthritis-was in fact true and was a legitimate, nonpretextual business reason to reject him from the apprenticeship program.
 
 The 1973 Rejection
 
 7
 When Stewart applied for the apprenticeship training program in 1973, he was 41 years old. The program is not open to employees over the age of 40. The company accordingly excluded him on the basis of his age. The district court held that Stewart's age constituted a legitimate, nondiscriminatory reason to exclude him and was not a pretext.
 
 
 8
 Having concluded that Stewart's claims regarding his 1959 and 1971 rejections were time-barred, and that the 1973 rejection was justified, the district court granted summary judgment to CPC.
 
 II.
 
 9
 Much of Stewart's brief to this court is devoted to his 1971 rejection. He contends that the district court erred in resolving the disputed issue of the state of his health in 1971, and he contends that his claim regarding the 1971 rejection is not time-barred. He does not dispute that his EEOC charge regarding the 1971 rejection was not filed within the time limitation set forth in section 706(d) of Title VII, 42 U.S.C. § 2000e-5(e). However, he reasons that in excluding him from the training program, the company has engaged in a continuing course of discrimination against him on the basis of his race, under the guise of various pretexts. On the basis of this "continuing-violation" theory, he argues that his claim regarding the 1971 rejection should not be considered time-barred. He further reasons that whether he had rheumatoid arthritis in 1971 is a question of fact which the district court should not have resolved in a summary judgment motion.
 
 
 10
 We hold that the claim regarding the 1971 rejection is time-barred. The rheumatoid arthritis issue is therefore immaterial, and the district court's resolution of it was not reversible error.
 
 
 11
 The Supreme Court addressed a continuing-violation theory in United Air Lines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Evans is, therefore, the starting point for our evaluation of Stewart's argument.
 
 
 12
 In Evans, plaintiff was an airline flight attendant who, when she married, was fired under United's "no marriage" policy for women flight attendants. The policy, which was later found to violate Title VII,[1] was discontinued shortly after her discharge. Several years later, the plaintiff was rehired by United, but was given no seniority credit for the years she had worked for United prior to her discharge. She brought suit challenging United's seniority policy, alleging, not that the policy itself discriminated against her on the basis of her sex, but that because of the policy she would continue to suffer in the present the harmful effects of United's past act of discriminatorily firing her. The Supreme Court flatly rejected this present-effects-of-past-discrimination theory as a basis for finding a violation of Title VII. The Court made clear that a Title VII plaintiff must demonstrate a present violation of Title VII in order to be entitled to any recovery, id. at 558, 97 S.Ct. at 1889. Once a present violation is shown, then of course retroactive relief is proper, id. at 558-59, 97 S.Ct. at 1889, citing Franks v. Bowman Transp. Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1973); but in the absence of a showing of present violation, there can be no recovery. Because the plaintiff in Evans could not demonstrate that United's policy of refusing to give seniority credit for past service discriminated against her on the basis of her sex, the Court held, her complaint was properly dismissed. Id. at 558, 97 S.Ct. at 1889.
 
 
 13
 It is important to note that Evans addressed only one of several theories of recovery under Title VII that have all been labelled, rather loosely, "continuing violation" theories. See generally Elliott v. Sperry Rand Corp., 79 F.R.D. 580 (D.Minn.1978). In Elliott, the court identified three other, quite different situations to which a continuing violation theory has been applied.
 
 
 14
 In the first situation, "continuing violation" is the term used to describe the rule that a violation of Title VII occurs, and triggers the time limit for filing a charge, when the employee knew or should have known that he or she was discriminated against. This rule is applied in cases, usually involving hiring or promotion practices, where the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the "violation" occurred. See Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); Cedeck v. Hamiltonian Federal Savings & Loan Association, 551 F.2d 1136 (8th Cir. 1977). Evans does not speak to this variant of the continuing-violation theory.[2]
 
 
 15
 The second situation is typified by Bartmess v. Drewrys USA, Inc., 444 F.2d 1186 (7th Cir.), cert. denied, 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971), in which the employer's express, openly espoused policy was alleged to be discriminatory. In Bartmess, women were forced to retire at 62, while men were forced to retire at 65. The plaintiff filed a discrimination charge shortly before her mandatory retirement. Defendant contended that because she had not yet been forced to retire, her complaint was not timely. This court held that the policy amounted to a continuing violation of Title VII, so that her filing was not premature. Id. at 1188. Evans, with its emphasis upon proving a "present violation," appears to reinforce rather than weaken the viability of the Bartmess continuing-violation theory, since the challenged policy was in place and unquestionably was applicable to the plaintiff at the time the discrimination charge was filed.
 
 
 16
 In the third situation, the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy as in Bartmess, supra. In such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory, acts. See Elliott v. Sperry Rand Corp., supra, 79 F.R.D. at 585. The present case falls into this category. Stewart's contention is that CPC covertly discriminated against him on the basis of his race, and that the discrimination is evidenced by a series of discrete acts-the successive rejections of his applications for the training program.
 
 
 17
 Although Evans does not speak directly to this brand of continuing-violation theory, the Supreme Court's emphasis upon the need to show a present violation of Title VII indicates that an employer may be held liable for a continuing practice of discrimination if the plaintiff can demonstrate that the practice has actually continued into the "present"-that is, into the time period relevant to the date the charge of discrimination was filed. At least one discriminatory act must have occurred within the charge-filing period. Discriminatory acts that occurred prior to this period constitute relevant evidence of a continuing practice, and may help to demonstrate the employer's discriminatory intent; and they will of course be used to determine the extent of the remedy that is in order. Evans, 431 U.S. at 558-59, 97 S.Ct. at 1889. But the prior discriminatory acts do not come into play at all unless the plaintiff can show in the first place that the discrimination is "presently" continuing.
 
 
 18
 Stewart's continuing-violation theory will be viable, then, only if he can show that CPC's unlawful discrimination continued into the "present"-that is, to 1973, when he first filed his EEOC charge. If he cannot show that the 1973 rejection was unlawfully discriminatory, he cannot prevail.
 
 
 19
 The district court examined the 1973 rejection and held, on the basis of facts as to which there was no genuine issue, that the company's action was not unlawfully discriminatory. We agree.
 
 
 20
 Stewart made out a prima facie case of discrimination under the test articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). He belongs to a protected minority, he applied and was qualified[3] for the apprenticeship program but was rejected, and the company thereafter continued to accept applications for the program. See id. at 802, 93 S.Ct. at 1824. CPC then met its burden of going forward with evidence of a legitimate, non-discriminatory business justification for rejecting Stewart: persons over the age of 40 are not accepted into the program, and Stewart was 41 years old when he sought admission in 1973. Once this business justification was offered, it was Stewart's burden to show by a preponderance of the evidence that CPC's asserted justification was a mere pretext for racial discrimination. Id. at 804, 93 S.Ct. at 1825; Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Read in the light most favorable to Stewart, the record evidence discloses no basis upon which a reasonable fact finder could conclude that CPC used the age limit as a pretext to exclude Stewart because of his race.
 
 
 21
 Stewart disputes neither the existence of the age limit nor that he exceeded it in 1973. He asserts that the limit was not instituted until 1971 (Appellant's Brief at 18), but he has offered no evidence-indeed, has never alleged-that it was instituted for the purpose of excluding him personally, or black employees generally, from the apprenticeship program. Moreover, there is no suggestion that CPC admitted other employees who were over the age limit to the program, while excluding Stewart. In sum, there is nothing in the record to indicate that the age limit-the basis for the 1973 rejection-was a pretext for racial discrimination. Stewart thus cannot show a "present" violation of Title VII. Therefore, his continuing violation theory is foreclosed. See Evans, supra.
 
 
 22
 The foregoing discussion is addressed to a "series-of-discrete-acts" theory of continuing violation, as differentiated from the other brands of continuing-violation theory outlined above. Stewart also appears to raise a "present-effects-of-past-discrimination" theory of continuing violation, which we address briefly. Under this latter theory, Stewart's reasoning is that CPC, having unlawfully excluded Stewart in 1959 and 1971, should not be permitted to exclude him in 1973, even though he had passed the age limit by then, because but for the company's prior unlawful discrimination, he would have entered the program before he reached the age limit. This argument cannot prevail. It was directly addressed and rejected in Evans. Under Evans, an employer's policy that operates in a neutral fashion (e.g., the seniority system in Evans, the age limitation here) is not rendered unlawful by its effect of perpetuating the harm done by a past discriminatory practice that either occurred before the passage of Title VII or was not made the basis of a timely Title VII charge. Evans, 431 U.S. at 558, 97 S.Ct. at 1889. The 1959 rejection occurred before Title VII's effective date; and Stewart did not file a timely charge with respect to the 1971 rejection. That the 40-year-old age limitation perpetuates the harmful effects of the 1959 and 1971 rejections (assuming they were unlawful) does not render the 1973 rejection, which was based on the age limitation, unlawful.
 
 
 23
 According to the undisputed material facts presented here, Stewart's 1973 rejection was the result of a company policy that was, on its face and in its operation, racially neutral. The district court therefore properly concluded that CPC was entitled to summary judgment on the claim regarding the 1973 rejection. Moreover, because Stewart failed to make out a "present" violation of Title VII, his "continuing violation" argument cannot prevail. The district court correctly concluded that Stewart's claims regarding the 1959 and 1971 rejections are time-barred. The grant of summary judgment to CPC was proper.
 
 
 24
 In addition, because Stewart obviously contemplated that the Union's liability depended, at the least, upon a finding that CPC's conduct was unlawful, our affirmance of judgment for CPC requires affirmance of the dismissal of the suit against the Union.
 
 
 25
 The judgment appealed from is affirmed.
 
 
 
 *
 After preliminary examination of the briefs filed in this appeal, the court notified the parties that it had tentatively decided oral argument would not be helpful in deciding the case. The notice provided that any party might file a "Statement as to Need for Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 **
 This appeal was originally decided by unreported Order on February 16, 1982. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an Opinion
 
 
 [1]
 Sprogis v. United Air Lines, 444 F.2d 1194 (7th Cir. 1971), cert. denied sub nom. United Airlines Inc. v. Sprogis, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). The plaintiff in Evans was not a party to the Sprogis case
 
 
 [2]
 In Ricks, supra, plaintiff was informed in June 1974 that he would not be granted tenure. In accordance with the employer's policy, plaintiff's teaching post did not terminate until a year thereafter. The Supreme Court held that the violation occurred when the plaintiff was informed of the tenure decision, not when the teaching position actually expired a year later. Having made that determination, the Court went on to state that the termination of plaintiff's employment was therefore not a discriminatory act but was rather the effect of the discriminatory tenure decision. The Court then cited Evans for the rule that the time for filing begins to run as of the date the discriminatory act occurs, not as of the date or dates the effects of such act may be felt. 449 U.S. at 258, 101 S.Ct. at 504. This observation, of course, followed from the initial determination that the violation occurred when the plaintiff knew or should have known that he had been discriminated against; the Evans rule played no part in the arrival at that determination
 
 
 [3]
 There is considerable disagreement over Stewart's "qualifications" for the apprenticeship program, in that CPC contends Stewart's rheumatoid arthritis continues to render him incapable of performing the job requirements. Stewart insists that he does not have rheumatoid arthritis and that even if he does he nevertheless can do the job. As will be seen, this dispute is not material. For present purposes, therefore, it is resolved in favor of Stewart