Vivian **FAULKNER–KING**, Plaintiff,

v.

The **BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,** Defendant.

No. 90–3092.

United States District Court, C.D. Illinois, Springfield Division.

Feb. 22, 1991.

**952**

Robert Kirchner, Champaign, Ill., for plaintiff.

Michael R. Cornyn, Champaign, Ill., for defendant.

## OPINION

RICHARD MILLS, District Judge:

Civil rights.

Sex discrimination.

The University filed a motion to dismiss or in the alternative for summary judgment. The United States Magistrate Judge has recommended that the motion be denied.

Following the filing of objections by the University, this Court has conducted a *de novo* review of the question presented by the motion.

We conclude that this action is time barred and thus must be dismissed. 28 U.S.C. § 636(b)(1).

### I.  Facts

On April 6, 1990, the Plaintiff, Vivian Faulkner–King, filed a one-count complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* alleging that the University of Illinois discriminated against her on the basis of sex when it denied her tenure in its School of Art & Design.  Plaintiff also has actions pending before the Illinois Department of Human Rights and in the Circuit Court of Champaign County alleging sex discrimination arising out of the same employment relationship.

Plaintiff originally filed a charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission (EEOC) on January 28, 1988.  Such a charge must be filed within 300 days of the unlawful employment practice.  42 U.S.C. § 2000e–5.  The University's motion to dismiss or for summary judgment [1] is premised upon the untimeliness of Plaintiff's filing.[2]

One of Plaintiff's arguments in opposition to the University's motion is that no discovery has been conducted to date on this question and such a limitation is subject to waiver, estoppel and tolling principles.  This argument is disingenuous because, in support of her opposition to the University's motion to dismiss, she has submitted a 252–page appendix containing the relevant correspondence between herself and University administrators.  She has apparently obtained this material through discovery in her state court action.  Thus, although she may not have conducted discovery *in this federal case*, she has obtained voluminous materials through her

---

1. Because the parties have submitted and we have considered matters outside the pleadings we will treat Defendant's motion as one for summary judgment under Rule 56.

2. The University also contends that this Court should abstain pending conclusion of Plaintiff's state court action.  Because of our ruling on the timeliness question, we do not reach this alternative argument.

state court action which is based upon the same facts at issue here.

## CHRONOLOGY OF EVENTS

*1985*

Nov. 12—Letter to Eugene C. Wicks, Director, from Don Pilcher, Chairman of the Personnel Committee recommending by a vote of 5–0 that Vivian Faulkner–King be rejected for tenure.

Nov. 13—Letter to Faulkner–King from Wicks advising her of the Committee's recommendation and his concurrence therewith.

Nov. 27—Letter to Wicks from Faulkner–King indicating that she will be appealing the decision not to recommend her for tenure.

Dec. 17—Letter to Wicks from Personnel Committee affirming their prior recommendation that tenure be denied.

Dec. 18—Letter to Faulkner–King from Wicks informing her of the Committee's affirmation of their prior decision to recommend she be denied tenure and his concurrence therewith.

Dec. 18—Letter to Dean Jack H. McKenzie from Wicks recommending that Faulkner–King be denied tenure and offered a one-year terminal contract.

*1986*

Feb. 25—Letter to Wicks from Faulkner–King requesting an additional review of her credentials by Wicks and the Personnel Committee.

Apr. 10—Letters to McKenzie and Faulkner–King from Wicks indicating that the Committee, upon further review, reaffirms its prior recommendation and advising that Wicks concurs in that recommendation.

Apr. 14—Letters to Vice–Chancellor Goldwasser and Faulkner–King from McKenzie requesting that a notice of non-reappointment and terminal contract be issued to Faulkner–King.

Apr. 18—Letter to McKenzie from Goldwasser advising that Goldwasser will request the Board of Trustees to issue a notice of non-reappointment and terminal contract to Faulkner–King for the 1986/87 academic year.

Apr. 28—Letter to Arthur R. Robinson, Chairman of the Faculty Advisory Committee, from Faulkner–King requesting the Committee to review the decision of the School of Art & Design.

May 8—Letter to Wicks from McKenzie advising that the Personnel Committee which had reviewed Faulkner–King was unlawfully constituted and requesting that a new committee be appointed to consider the promotion documents of Faulkner–King and a second professor.

May 13—Letter to Faulkner–King from McKenzie advising her of the new Personnel Committee and its *de novo* review of her credentials.

May 29—Letter to Wicks from Pilcher, Chairman of the new Personnel Committee recommending that Faulkner–King be denied tenure and issued a terminal contract.

June 3—Letter to Faulkner–King from Wicks advising her of the Personnel Committee's recommendation and informing her that Wicks concurs in the recommendation.

July 3—Letter to Wicks from Faulkner–King advising Wicks of her decision to seek further review of her tenure denial and requesting the information which the Committee reviewed in reaching its decision.

July 17—Letter to Faulkner–King advising her to submit any additional information to the Committee by August 4, 1986.

Aug. 8—Letter to Wicks from Pilcher advising that the Committee reaffirmed its prior recommendation that Faulkner–King be denied tenure and issued a terminal contract.

Aug. 11—Letter to Faulkner–King from Wicks advising her of the Committee's recommendation and that Wicks will request she be issued a notice of non-reappointment and terminal contract for the 1986/87 academic year.

Aug. 11—Letters from Wicks and McKenzie to Goldwasser informing him of the Personnel Committee's recommenda-

tion and requesting that a terminal contract be issued to Faulkner–King.

Aug. 20—Terminal contract issued to Faulkner–King by the Board of Trustees.

Sep. 1—Letter to McKenzie from Faulkner–King requesting that he review the decision to deny her tenure.

Sep. 17—Letter to Faulkner–King from McKenzie reaffirming his prior recommendation to Goldwasser that she be denied tenure and issued a terminal contract.

*1987*

Aug. 20—Expiration of Faulkner–King's terminal contract.

The foregoing is a summary of the relevant correspondence between the parties and omits certain letters as well as the subjective characterizations of those letters advanced by Plaintiff in her appendix. Several of the omitted letters involve the Faculty Advisory Committee's concerns regarding the overall promotion process followed by the School of Art & Design.

## II. Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.*

at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. Analysis

In *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court considered the identical issue which we now have before us. Columbus Ricks, a black Liberian, joined the faculty of Delaware State College in 1970. In February 1973, the Faculty Committee on Promotions and Tenure recommended that Ricks be denied tenure. The Committee agreed to reconsider its decision the following year.

In February 1974 the Committee reaffirmed its prior decision. The following month the Faculty Senate voted to support the Committee's negative recommendation. On March 13, 1974, the College Board of Trustees voted to deny tenure to Ricks.

Ricks immediately filed a grievance with the Board's Educational Policy Committee which took the matter under advisement. During the pendency of the grievance, the Trustees offered Ricks a one-year terminal contract on June 26, 1974, which expired on June 30, 1975. On September 12, 1974, the Board of Trustees notified Ricks that it had denied his grievance.

Ricks filed a charge of employment discrimination with the EEOC on April 28, 1975. Two years later the EEOC issued Ricks a "right to sue" letter and he promptly commenced suit under Title VII in district court alleging that the tenure denial was discriminatory because it had been based on his national origin.

The district court granted the College's motion to dismiss on the ground that the unlawful employment practice had occurred, at the latest, on June 26, 1974, when the Trustees extended the offer of a terminal contract to Ricks. On appeal, the Third Circuit reversed, reasoning that an employee who has been told of the decision to terminate him but who was still working should not be required to file suit. Be-

cause the decision to terminate an employee could be reversed, the circuit court held that the time period for filing a charge with the EEOC did not begin to run until the terminal contract expired on June 30, 1975.

The Supreme Court reversed, reasoning that Ricks's allegations of discrimination all related to the decision denying him tenure which was final and communicated to him on June 26, 1974, when he was offered a one-year terminal contract. This was true even though the *effect* of the denial— loss of a teaching position—did not occur until a year later. *Ricks*, 449 U.S. at 257– 58, 101 S.Ct. at 503–04.

The Court adopted June 26, 1974, as the operative date at which time the time period under Title VII began to run. The Court expressly rejected September 12, 1974, the date on which Ricks' grievance was denied, as the effective date. The Court reasoned that the grievance procedure, by its very nature, was a *remedy* for a past decision (denial of tenure), rather than an opportunity to *influence* that decision. *Id.* at 261, 101 S.Ct. at 505.

As in *Ricks*, the facts of the case at bar evidence a clear, unbroken string of negative decisions regarding Faulkner–King's tenure culminating in the extension of a one-year terminal contract by the Board of Trustees on August 20, 1986. Plaintiff raises three arguments in opposition to the University's motion for summary judgment.

### A.

■ *First*, Plaintiff argues that the University's actions reflect a continuing violation of Title VII. In *Stewart v. CPC International, Inc.*, 679 F.2d 117 (7th Cir.1982), the Seventh Circuit discussed three variations of the "continuing violation" theory. In the first situation, "continuing violation" is the term used to describe the case where an employer's decision-making process takes place over an extended period of time as in *Ricks*. While the University's procedures regarding tenure invitations take place over an extended period of time, as in *Ricks*, the final decision regarding Plaintiff was made on August 20, 1986, when the Board of Trustees extended her a terminal contract. Any action subsequent to that date was merely an attempt to obtain reconsideration of a past decision rather than to influence a future decision.

The second "continuing violation" situation occurs when the employer's openly-espoused policy is facially discriminatory such as requiring women to retire at a younger age then men. In the third situation the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly. Neither situation is applicable to the case at bar. *Stewart*, 679 F.2d at 120–21.

### B.

■ Plaintiff's *second* argument in response to the University's motion for summary judgment is that the chronology of events in this case is so confusing that it is unfair to hold the Plaintiff to *any date* for the commencement of the limitations period. As support for this position Plaintiff relies on a comment made by the court in *Lever v. Northwestern University*, No. 84– C–11025, 1990 WL 16758, 1990 U.S.Dist. Lexis 1262 (N.D.Ill.1990).

In *Lever* the court was required to choose between the date the dean advised a professor that he was adopting the Promotion and Tenure Committee's recommendation denying the professor tenure and extending a terminal contract and the date the Provost accepted the dean's recommendation. After discussing the evidence supporting each respective date, the court stated that a third possibility existed: "the court could find that Northwestern's procedures ... were so hopelessly equivocal that it would be manifestly unfair to hold Ms. Lever to ascertaining a date certain where none existed. In such a case, the court would find Ms. Lever's complaint to be timely."

As apparent support for the foregoing statement the *Lever* court cited *Gordon v. National Youth Work Alliance*, 675 F.2d 356 (D.C.Cir.1982). In *Gordon* the district court dismissed a Title VII claim on the basis that Plaintiff had not commenced her action *within 90 days of receiving notice of her right to sue* from the EEOC as

required by § 2000e–5(f)(1). The return receipt from the EEOC's "right to sue" letter was ambiguous and it was unclear whether Plaintiff's action was filed 90 or 92 days after she received the letter.

On appeal the *Gordon* court reversed the dismissal of the action on the ground that it was improper for the district court to consider the return receipt or other documents outside the pleadings when ruling on a motion to dismiss. Thus, *Gordon* clearly does not support the *Lever* court's statement which disregards Congress' clear intent in imposing a time limitation in § 2000e and ignores the important policy reasons behind periods of limitations recognized by the *Ricks* Court. *Ricks*, 449 U.S. at 259–60, 101 S.Ct. at 504–05.

### C.

Plaitiff's *third* argument in opposition to the University's motion for summary judgment is based upon the Supreme Court's holding in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), that the requirement of filing a timely complaint with the EEOC is akin to a statute of limitations and thus subject to waiver, estoppel, and equitable tolling. The Magistrate Judge stated in his recommendation that genuine issues of material fact exist regarding this question. Respectfully, we must disagree.

In her memorandum in opposition to the motion for summary judgment Plaintiff relies upon the continuing efforts of the Faculty Advisory Committee on her behalf and the University's ombudsman's advice to exhaust internal procedures prior to seeking an external remedy.

The University's *Guidelines Regarding the Procedures for the Issuance and Review of Notices of Nonreappointment of Faculty Members During Their Probationary Period* establishes the actual "chain of command" regarding notices of non-reappointment and terminal contracts which runs from the University Department through the Dean to the Vice–Chancellor and thence to the Board of Trustees. The Faculty Advisory Committee serves only a collateral role as an advisory body to the Chancellor.

### IV. Conclusion

Plaintiff was certainly aware by September 17, 1986, when she received the letter from Dean McKenzie rejecting her request for reconsideration that the decision to deny her tenure was final and that any efforts by the Faculty Advisory Committee on her behalf were solely to change a *final* decision rather than to have input into a future decision. *Ricks*, 449 U.S. at 261, 101 S.Ct. at 505.

*Ergo*, Defendant's motion for summary judgment (d/e 4 # 2) is ALLOWED. Defendant's motion to dismiss (d/e 4 # 1) and motion to stay discovery (d/e 3) are DENIED AS MOOT.

Case CLOSED.