**Curtis POWELL, Plaintiff,**

v.

**CITY OF CHICAGO, Chicago Fire Department, Defendants.**

**No. 99 C 5360.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 11, 2000.

Lester Lloyd Barclay, Crystal Laprie Roberts, Patrick D. John, Barclay & Dixon, P.C., Chicago, IL, for Curtis Powell.

Nancy L. Van Allen, Mara Stacy Georges, Naomi Ann Avendano, Diane S. Cohen, Valerie Depies Harper, City of Chicago, Law Department Corporation Counsel, Chicago, IL, for City of Chicago, Chicago Fire Department.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Curtis Powell, a Chicago Fire Department ("CFD") Captain, filed a complaint alleging racial harassment by the defendants the City of Chicago ("the City") and the CFD, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). The City filed a partial motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), arguing that certain allegations in paragraphs eleven through twenty-five of plaintiff's complaint are time barred. The plaintiff has agreed to remove the CFD as a defendant. The court therefore refers to the City as the sole defendant. Defendant has also moved to have plaintiff's punitive damages claim stricken from the complaint.

### FACTS

Plaintiff is currently a CFD Captain in Engine 96, located at 441 North Waller, Chicago, IL. Plaintiff is African–American and has been employed by the CFD as a firefighter since February 19, 1980. Plaintiff has held the rank of Captain since August 1993. Plaintiff transferred to Engine 96 around June 1, 1997.

Plaintiff alleges several instances of racial harassment spanning from June 1997 to the present. Upon plaintiff's arrival at Engine 96, plaintiff noticed postings on the bulletin board concerning himself and affirmative action, along with a list of other minority firefighters. Second, plaintiff alleges he was excluded from participating in a fire house "food club." Third, plaintiff alleges that on July 16, 1997, he turned on the ceiling fan in his sleeping quarters and a powdery substance, later determined to be detergent soap, rained down on him. The soap contacted his eyes and he required emergency medical treatment. Some white firefighters admitted to placing the detergent on the fan. Plaintiff subsequently contacted his superior to request an investigation. Fourth, plaintiff alleges that he was not reimbursed for the medical treatment he underwent after the detergent incident even though he submitted paperwork for the expense incurred. Fifth, plaintiff alleges that white subordinates refused to follow his orders to clean the fire house on two occasions, once soon after his arrival in June 1997 and again in December 1997.

Finally, plaintiff alleges that in August 1998 he discovered postings on the bulletin board consisting of a drawing of plaintiff with the words "penis face," articles about plaintiff, a list of minority fire fighters, and a personal journal entry referring to plaintiff in a demeaning manner. After plaintiff removed the postings, one of his white subordinates, Marv Hegele ("Hegele"), complained to the Battalion Chief, Lou Marolda ("Marolda"), also white. Plaintiff alleges that during a meeting between plaintiff, Marolda and Hegele, he was told that he should accept a little harassment and that the other two African–Americans on his shift did not object to doing so.

Plaintiff filed a complaint with the CFD's internal affairs division on September 24, 1998, alleging racial harassment. Plaintiff alleges that the investigation, which was completed six months after he filed his complaint, concluded that the

plaintiff had been racially harassed. Plaintiff alleges that he continues to be excluded from the fire house "food club" and that offensive postings continue to appear on the bulletin board, such as articles concerning plaintiff and the investigation of his internal affairs complaint.

Plaintiff filed discrimination charges against the CFD with the Equal Employment Opportunity Commission ("EEOC") on January 14, 1999. Plaintiff requested a right-to-sue letter from the EEOC, which was issued on May 20, 1999. Plaintiff filed the instant law suit on August 16, 1999.

## STANDARD

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429–30 (7th Cir.1996). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Travel All Over the World*, 73 F.3d at 1428.

## DISCUSSION

In Illinois, failure to file a charge with the EEOC within 300 days of the alleged discriminatory act renders the charge untimely. *See Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir.1995). Defendant moves to dismiss the allegations of conduct or incidents that occurred outside of the 300–day period, arguing that they are time-barred. Because plaintiff filed his EEOC charge against the CFD on January 14, 1999, any racial harassment occurring before March 3, 1998, would be time-barred under 42 U.S.C. § 2000e–5(e), unless plaintiff can show that these acts were "related closely enough" to the acts occurring within the established time frame "to be considered one ongoing violation." *Id.* The continuing violation doctrine would allow plaintiff to obtain relief for a time-barred act of discrimination by connecting it with acts that occurred within the statutory limitations period. *See Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.1992). When the doctrine applies, courts treat the series of acts as one continuous act ending within the limitations period. *See id.*

■ The principle of continuing violation is subject to standard principles of limitations of laws such as the discovery doctrine, equitable estoppel, and equitable tolling. *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164, 1165 (7th Cir.1996). The discovery doctrine excuses a plaintiff from filing suit before it is feasible to do so. *Id.* at 1166. This means that a plaintiff may allege a long line of conduct provided that he sues "as soon as the harassment becomes sufficiently palpable that a reasonable person would realize [ ]he had a substantial claim under Title VII." *Id.* The discovery doctrine effectively limits plaintiffs from bringing suit on claims gone stale but for the plaintiffs' failure to bring suit within the statutory period. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir.1990) (holding that statutes of limitations serve the important purpose of encouraging prompt filing of claims and of removing debilitating uncertainty about legal liabilities).

The Seventh Circuit recognizes three continuing violation theories. The first comes from "cases, usually involving hiring or promotion practices, where the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the 'violation' occurred." *Stewart v. CPC International Inc.*, 679 F.2d 117, 120 (7th Cir.1982). The first continuing violation theory is not ap-

plicable to the instant case because there is no discriminatory decision making process alleged and it was not difficult for the plaintiff to determine the exact date of the discriminatory behavior.

"The second theory stems from cases in which the employer has an express, openly espoused policy that is alleged to be discriminatory." *Selan,* 969 F.2d at 565 (citing *Stewart,* 679 F.2d at 121). Defendant argues that plaintiff cannot contend that defendant openly espoused a policy of discrimination because the City prohibits employment discrimination. Plaintiff responds that he is alleging that defendant had an open policy of discrimination. Plaintiff does not state anywhere in the complaint, however, that defendant had the sort of widely-disseminated, discriminatory personnel management policy which other courts in this district have concluded falls under the second theory. *See Epelbaum v. Chicago Bd. of Educ.,* 1999 WL 89754, *4 (N.D.Ill. Feb.9, 1999) (holding that "certain of [the plaintiff's] claims might be read as challenges to Board policies of refusing to hire teachers whose prior teaching experience or whose own elementary education occurred outside the United States"); *Stuckey v. City of Naperville,* 1998 WL 173298, *3–4 (N.D.Ill. April 7, 1998) (upholding the plaintiff's continuing violation claim under the second theory because the plaintiff had alleged that a policy in the City's Employee Handbook "expressly declares, inter alia, that the City will not accommodate employees who suffer from a disability with light duty positions or reassignments"). Plaintiff does not allege in his complaint that defendant had a discriminatory hiring policy, or that Marolda's expectation that Black firefighters tolerate a certain amount of racial harassment was the articulation of an explicit City policy. Accordingly, the court concludes that plaintiff does not state a continuing violations argument under the second theory.

"The third continuing violation theory stems from cases in which 'the plaintiff charges that the employer has, for a period of time, followed a practice of discrimi-nation, but has done so covertly, rather than by way of an open notorious policy.... In such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory, acts.'" *Selan,* 969 F.2d at 565 (quoting *Stewart,* 679 F.2d at 121).

When considering the existence of the third type of continuing violation, courts will examine three factors: "(1) whether the acts involve the same subject matter; (2) the frequency at which they occur; and (3) the degree of permanence of the alleged acts of discrimination, 'which should trigger an employee's awareness of and duty to assert his or her rights.'" *Filipovic v. K & R Exp. Sys. Inc.,* 176 F.3d 390, 395 (7th Cir.1999) (quoting *Selan,* 969 F.2d at 565). In assessing the third factor, the court must determine if "the time-barred act[s] ha[d] the degree of permanence which should have triggered the employee's awareness that his rights were violated." *Selan,* 969 F.2d at 567. In addition, "to establish such a serial violation, the plaintiff must demonstrate that the defendant's acts were related closely enough to constitute a continuing violation and not merely discrete, isolated, and completed acts which must be regarded as individual violations." *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 446 (7th Cir.1994) (internal citations and quotation marks omitted). An aggrieved party may not "sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one," unless the aggrieved party could not have reasonably known he was the subject of racial harassment. *Garrison,* 165 F.3d at 570.

Several courts in this district require plaintiffs to plead a factual basis for the third continuing violation theory. *See, e.g., Welch v. Cook County Clerk's Office,* 36 F.Supp.2d 1033, 1040 (N.D.Ill.1999); *Payne v. Abbott Laboratories,* 999 F.Supp. 1145, 1150 (N.D.Ill.1998) ("By not alleging specific instances when [the plaintiff] was denied promotion, plaintiffs' ·complaint does not establish a factual basis for the

application of the continuing violation doctrine."); *Saldana v. City of Chicago*, 972 F.Supp. 453, 456 (N.D.Ill.1997). Other courts, however, conclude that it is premature to determine on a motion to dismiss whether allegations relating to events that fall outside the limitations period are time-barred. *See, e.g., Bowers v. Radiological Society of North America, Inc.*, 57 F.Supp.2d 594, 598 (N.D.Ill.1999) ("Whether [a plaintiff] knew or should have known that the acts of which she complains were discriminatory at the time they occurred cannot be determined on a motion to dismiss."); *Smith v. City of Chicago*, 1999 WL 1000517 (N.D.Ill. Oct.26, 1999) ("[The plaintiff] alleges discriminatory acts within the 300–day period. While [the plaintiff] may not be able to establish that these acts were sufficient to establish adverse employment actions and that these acts were part of a continuing violation, the court cannot make these determinations at this stage."); *Shipbaugh v. Boys & Girls Clubs of America*, 883 F.Supp. 295, 297 (N.D.Ill.1995).

In the instant case, the court cannot determine the degree of permanence of the alleged acts on a motion to dismiss. From the face of the complaint, the court cannot say with certainty that a reasonable person would have realized that he was being subjected to race-based harassment. For instance, although plaintiff alleges that the bulletin board postings that greeted him when he first arrived at Engine 96 involved race, he does not allege that these postings were derogatory on their face. Similarly, a reasonable person might have perceived both the insubordination and the detergent prank as resulting from the old guard's resistance to a new captain, rather than from race discrimination. In short, examining the allegations in the light most favorable to plaintiff, a reasonable person might not have been able to recognize each alleged act as an individual violation, but might only have been able to understand through hindsight that these acts were motivated by race-based animus.

Moreover, nothing in plaintiff's complaint suggests that he personally became aware of the discriminatory nature of the incidents he experienced until he met with Marolda after the August 1998 incident. "Without such a finding, the court cannot find permanence, particular[ly] in the context of a hostile environment claim." *Juszczak v. Blommer Chocolate Co.*, 1999 WL 1011954, *7 (N.D.Ill. Sept.30, 1999). Although plaintiff alleges that he contacted his superior about the detergent incident in July 1997, nothing in his complaint suggests that he told his superior that he thought the incident was racially motivated. All plaintiff alleges in the complaint is that he asked his superior to conduct an investigation into the incident.

■ Because "[t]he purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts, whose character as discriminatory acts was not apparent at the time they occurred," *Doe*, 42 F.3d at 446, the court declines to decide at this juncture whether certain alleged incidents are time-barred. In his complaint, plaintiff alleges separate but similar acts of discrimination, one of which is within the limitations period. This final discriminatory incident, in which plaintiff's supervisor allegedly told him that he should tolerate a bit of harassment, would certainly place a reasonable person on notice that he had a claim. Plaintiff sued within 300 days of this final incident. Plaintiff has therefore stated a continuing violations claim in the instant case.

The court's decision to allow plaintiff to go forward rests in part on the fact that the instant partial motion to dismiss would not dispose of the entire case. Because the parties will have to conduct discovery regardless of the outcome of the instant motion, it would be premature to bar plaintiff at this early stage from attempting to demonstrate that the time-barred conduct can be linked to the timely allegation. The court cautions, however, that if the facts developed during discovery demonstrate that plaintiff knew or should have known that various of the alleged incidents were

race-based, or if these facts reveal that plaintiff requested the investigation into the detergent incident because he believed he was being discriminated against on the basis of race, plaintiff may not be able to use the continuing violations theory to recover for the time-barred incidents.

## CONCLUSION

For the foregoing reasons, defendant's motion to partially dismiss plaintiff's Title VII claim is denied. By agreement of the parties, the CFD will be stricken from the complaint, as will the plaintiff's claim for punitive damages. Plaintiff is directed to file an amended complaint conforming to this opinion.