Charles HUGHES, Plaintiff–Appellant,

v.

Edward J. DERWINSKI, Secretary of the Department of Veteran's Affairs, Defendant–Appellee.

No. 91–3297.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1992.

Decided July 16, 1992.

---

Gerald A. Goldman, Arthur R. Ehrlich (argued), Goldman & Marcus, Chicago, Ill., for plaintiff-appellant.

Elizabeth M. Landes, Asst. U.S. Atty., Fred Foreman, U.S. Atty., Ernest Y. Ling (argued), Office of U.S. Atty., Criminal Div., Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, FLAUM, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Charles Hughes began working with the Veterans Administration in 1958. Mr. Hughes is a black male. Mr. Hughes filed a Title VII action against the Secretary of the Department of Veteran Affairs ("the VA") after he did not receive promotions to two different positions. Mr. Hughes alleged that he was denied a promotion to one job due to his sex and he was denied a second promotion to a different job on the basis of race. Mr. Hughes also alleged the VA retaliated against him by unfairly disciplining him after Hughes filed formal ad-

ministrative discrimination actions. The VA filed a motion for summary judgment on all counts of Hughes's complaint, and the district court granted the VA's motion. Hughes now appeals to this court. We affirm the district court's decision in favor of the VA on Hughes's retaliation claim, but we reverse its decision with respect to Hughes's sex and race discrimination claims.

*Background Facts*

Charles Hughes began working in the Veteran's Administration Hospital in North Chicago, Illinois ("VA Hospital") in 1958. Hughes started out at the VA Hospital as a laundry worker, and in 1959 he was transferred to a housekeeping aide position. Around 1960 Hughes was promoted to "Housekeeping Team Leader," and he received a promotion to "Housekeeping Aid Foreman" sometime in 1966 or 1967. As of 1985, Hughes had received no further promotions, and Hughes still held the Housekeeping Aid Foreman position, which is a WS–2 grade job.[1]

In 1984 Hughes applied for a promotion to a position as Assistant Hospital Housekeeping Officer ("AHHO"). Mr. Sims, Hughes's supervisor at the time, advised Hughes he was qualified for the position. Subsequently, however, the vacancy announcement was canceled and no one was appointed. The record contains a memorandum dated January 22, 1985, from the VA to Hughes indicating that the position was to be reannounced. The memorandum also states that the AHHO position just canceled was a GS–9/11 grade job.[2]

In June 1985 the VA reannounced the AHHO position at VA Hospital. This AHHO position was graded GS 7/9 or 11— basically the same as the previously announced position although the previously announced position did not include the lower grade 7. About three months later on September 5, 1985, the VA announced an available position as Housekeeping Aid

Foreman ("HAF") at VA Hospital. The HAF position was a WS–4 level job. Hughes applied for both positions, but he was selected for neither one. A white male was selected for the AHHO position on August 8, 1985, and a black female was selected for the HAF position on October 25, 1985.

Hughes was advised that he was not selected for the AHHO position because the VA believed the documentation he submitted did not indicate he had the requisite knowledge and skills required for the job. Hughes alleges that the VA refused to submit a supervisory appraisal as required by the VA's Promotion Plan, and that he lacked the necessary documentation because of the VA's refusal. As for the HAF position, Hughes was found to be among the most qualified for the position, and he was even preselected from the applicant pool for the job. The selecting official, however, decided not to choose Hughes, noting as a reason for not selecting Hughes his poor administrative abilities in his supervisory position as Housekeeping Foreman. The selecting official also noted Hughes did not accept an offer to be "Acting Assistant Chief" of housekeeping at VA Hospital. The woman who ultimately received the HAF job, on the other hand, did accept the "Acting Chief" position and held the "Acting Chief" position for eight months before receiving the HAF position Hughes sought.

Hughes filed a formal administrative complaint with the Department of Veterans Affairs on July 16, 1986, alleging the VA denied him a promotion to the AHHO position on the basis of race and the VA denied him a promotion to the HAF position because of his sex. Although two different EEO investigator counselors recommended a finding of discrimination on each of Hughes's claims, the Office of General Counsel of the VA ruled there was no discrimination. Hughes appealed this decision to the Equal Employment Opportuni-

---

**1.** "WS" refers to wage or pay scale for hourly employees of the VA. "GS," which will be used later, refers to the "government scale" pay levels for VA employees paid on salary instead of a per hour basis.

**2.** *See* footnote 1 for explanation of grades.

ties Commission ("EEOC"). The EEOC affirmed the Office of General Counsel of the VA's decision.

Approximately four months after he filed a formal complaint, on November 4, 1982, Hughes received a "letter of counseling" from his supervisor, the Chief of Building Management Services at VA Hospital. Hughes's supervisor knew of Hughes's formal discrimination complaint because he was asked to give a written statement to one of the EEO counselors who responded to Hughes's charge. On February 6, 1990, Mr. Hughes received a "letter of admonishment" from his immediate supervisor, Jo Lee Rowell. Rowell held the HAF position for which Hughes applied, and she knew that Hughes had filed a formal discrimination complaint concerning his nonselection for the job she held.

On August 1, 1990, Hughes filed a complaint in district court. Hughes alleged in his complaint that the VA discriminated against him, in violation of Title VII of the Civil Rights Act of 1964, by denying him promotions to the AHHO and HAF positions. Hughes further alleged that the disciplinary letters he received were in retaliation for his EEO claims.

The VA filed a motion to dismiss, or in the alternative, for summary judgment, on May 28, 1991. The district court granted the VA's motion on all counts of Hughes's complaint. The district court found that Hughes had failed to present evidence indicating Hughes was qualified for the AHHO position, and he therefore failed to establish a prima facie case of race discrimination. The district court decided Hughes established a prima facie case of sex discrimination for the VA's failure to promote him to the HAF position. However, the district court then decided the VA presented a nondiscriminatory reason for not selecting Hughes, and Hughes did not present sufficient evidence that the VA's reasons for failing to promote him were pretextual. The district court also decided Hughes did not present sufficient evidence of retaliatory intent or motivation behind the disciplinary letters Hughes alleged

were issued in retaliation for his filing of a formal discrimination complaint.

*Analysis*

Hughes appeals the district court's entry of summary judgment against his sex and race discrimination claims as well as his retaliation claim. Of course summary judgment may be granted only if the record, including pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits indicate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We review the district court's decision *de novo,* and all factual inferences are to be taken against the moving party. *See Powers v. Dole,* 782 F.2d 689, 694 (7th Cir.1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

This court applies the analysis set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in reviewing grants of summary judgment in Title VII actions. The *McDonnell Douglas* case sets out the order and allocation of proof in an employment discrimination action. The plaintiff in a Title VII action must first establish a prima facie case of discrimination. In this case Hughes must show that (1) he belongs to a protected group; (2) he applied for and qualified for a job in which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) the employer hired someone outside of the protected group. *See* 411 U.S. at 802, 93 S.Ct. at 1824. If a Title VII plaintiff establishes these four elements, *McDonnell Douglas* then provides that the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for denying a job position to the plaintiff while granting it to someone else. 411 U.S. at 802–03, 93 S.Ct. at 1824. Last, if the employer articulates a legitimate, nondiscriminatory reason for rejecting the Title VII plaintiff, the burden of production shifts back to the plaintiff, and the plaintiff must show that the employer's articulated reason is pretextual. Having set out the basic framework for our review of the district

court's decisions, we will first examine Hughes's claim of discrimination concerning the AHHO position, and then we will look at his claim concerning the HAF position.

The district court found Hughes failed to carry his burden of production in proving a prima facie case of race discrimination regarding the AHHO position. Specifically, the court decided that Hughes failed to come forward with facts demonstrating his qualifications for the job. Hughes seeks to demonstrate his qualifications for the AHHO job by relying on the statements of his former supervisor, Mr. Sims, who told Hughes he was qualified to be AHHO when the job was originally posted in 1984. Hughes also maintains that he has over twenty years' experience as a Housekeeping Aide Foreman, WS-2, which qualifies him for the AHHO job, especially in light of the fact that he has received a special performance award and very good performance evaluations. Finally, Hughes points out that the position description for the HAF job, for which he was found qualified, and the position description for the AHHO job overlap in many ways; thus, if he was qualified for the HAF position, Hughes reasons he must be qualified for the AHHO position.

In rebuttal, the VA argues that Hughes has presented no evidence that the qualifications for the AHHO position announced in 1984 are the same as the qualifications for the AHHO position announced in June of 1985. Furthermore, the VA says Hughes has not shown that the two jobs are even similar. On the contrary, although Hughes did not submit the job description for the AHHO job announced in 1984 and withdrawn in January of 1985, he did produce evidence indicating that the position withdrawn in January 1985 was to be *reannounced* at a later time. Thus, when the AHHO job was in fact reannounced in June of 1985 with the same GS level listed on the first (and even including one lower GS level because the first position listed GS-9/11 and the reannounced position listed GS-7/9 or 11), the clear inference is that the jobs are at the very least similar and more probably the same

job. The VA also asserts we should reject Mr. Sims's statement regarding Hughes's qualifications to be an AHHO as both speculative and hearsay, and the VA cites *Skagen v. Sears, Roebuck & Co.*, 910 F.2d 1498, 1499 (7th Cir.1990). We fail to see how *Skagen* is relevant. In *Skagen* this court affirmed the judgment of the district court's entry of summary judgment in favor of Sears. The district court stated that Skagen's testimony that his former boss told Skagen that age "might be the reason" for Skagen's alleged demotion was not part of the employer's decision-making process. The district court stated further the testimony was speculative and was hearsay. In this case, Mr. Sims unequivocally told Hughes he was qualified for the AHHO position, so the statement was not speculative. And further, the statement was not hearsay because at the time he made the statement to Hughes Mr. Sims was an agent of the VA who made a statement within the scope of his employment. *See* Fed.R.Evid. 801(d)(2)(D). Neither of the VA's arguments, therefore, carry much weight. In any event, Hughes does not rely only upon Mr. Sims's statement as evidence he was qualified to be an AHHO. He also points to the job descriptions of the HAF job, for which Hughes was found qualified, and the AHHO job.

The HAF description lists such necessary qualifications as supervision of housekeeping operation and sanitation, supervision and evaluation of eight foremen, evaluation of manpower and supplies, assisting in formulating budget requests, and conducting or recommending training. The AHHO job description lists as job tasks: supervision of over 190 people including fifteen supervisors and assisting the Service Chief in storage, receipt and care of patient valuables; establishing a sanitary environment in the entire hospital; maintaining linen and laundry service at lowest cost; planning and direction of all Building Management operations; creating budget estimates for Building Management. The job description places special emphasis on a high degree of original thinking and the ability to integrate many aspects of hospi-

tal housekeeping service. In addition to submitting the job description of the HAF job, for which he was found qualified, Hughes also submitted a recommendation dated November 1977 from the Chief of Building Management Services that Hughes receive a Superior Performance Award for his adept handling of emergency situations that frequently arose in his job. Hughes says this award combined with excellent supervisory appraisals Hughes received just before he applied for the AHHO position and the overlapping HAF and AHHO job descriptions is enough to prove a prima facie case showing he was, at a minimum, qualified for the AHHO position.

■ The VA does not contest Hughes's extensive list of his qualifications to be an AHHO based on the previously mentioned evidence; rather, the VA relies only on the argument that Hughes's former supervisor's evaluation of Hughes's qualifications should be rejected as speculative and hearsay and because Hughes failed to prove that the AHHO position announced in 1984 and the position announced in June of 1985 were the same position. We have already explained why we are not persuaded by the VA's counterarguments. And, while the HAF and AHHO job descriptions are not completely identical, there is enough overlap between them, combined with evidence of Hughes's twenty years' experience with the VA, the qualifications listed in his AHHO application and Mr. Sims's statement to satisfy us Hughes has put forth enough proof he was minimumly qualified to be an AHHO. We find that Hughes proved all the necessary elements of a prima facie case under *McDonnell Douglas.*

The district court did not rely only upon its conclusion that Hughes did not prove he was qualified to be an AHHO and therefore did not prove a prima facie case of discrimination under *McDonnell Douglas.* The district court also found that Hughes failed to produce evidence that the VA's rationale for rejecting him was pretextual. The VA stated in an interrogatory Hughes was rated ineligible based on the documentation he submitted, which did not indicate he possessed the requisite skills for the job.

Hughes contends, however, that his documentation does not contain a supervisory appraisal, which the VA was supposed to submit for him. The VA conceded that the appraisal was not prepared for Hughes even though the VA's own Promotion Plan specifies that supervisory appraisals are to be considered and the Plan also states that the Personnel Officer is responsible for making sure that supervisors carry out the requirements of the Plan. The district court, however, decided the VA's failure to submit a supervisory appraisal for Hughes does not justify an inference of discriminatory intent. We think the district court's conclusion overlooks that the VA stated in an interrogatory answer it submitted supervisory appraisals only for the applicants to the AHHO job who were not black (three whites and one Pacific Islander). We note the district court's citation to *Jamil v. Secretary, Department of Defense,* 910 F.2d 1203, 1207 (4th Cir.1990), which states "Title VII is not a general bad acts statute; it only addresses discrimination on the basis of race, sex, religion, and national origin...." If a supervisory appraisal was not prepared for Hughes alone, we might agree with the district court that there is not enough evidence of discriminatory animus. However, the record indicates not only that appraisals were not prepared for the only blacks who applied for the AHHO position when the VA's Promotion Plan indicates that it was the VA's responsibility to have the appraisals done, it also indicates through the VA's answers to interrogatories that there was no justification for not preparing them. We think this evidence raises an inference indicating that the VA's nondiscriminatory reason for not promoting Hughes was pretextual. Therefore, we do not think summary judgment on Hughes's race discrimination claim was appropriate.

■ As for Hughes's sex discrimination claim concerning the HAF position, the district court found and we agree that Hughes proved the necessary elements of a prima facie case of sex discrimination under *McDonnell Douglas.* The VA pre-selected Hughes as a candidate for the HAF position, and in an answer to an interrog-

atory the VA placed him in the category of applicants considered most qualified for the position. By establishing a prima facie case, Hughes created a rebuttable presumption that the VA unlawfully discriminated against him. *See U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); and *McDonnell Douglas* )). However, the district court then decided Hughes presented no evidence that the VA discriminated against Hughes on the basis of his sex in giving the position to a woman the VA considered more qualified. Hughes argued if Jo Lee Rowell, the woman selected to be a HAF, was more qualified than he was, it was only because the VA discriminated against him by giving Ms. Rowell preferential training by allowing her to be "Acting Assistant Chief" of Housekeeping for eight months without rotating the position at all, even though the practice of rotating temporary positions was well established by Personnel Guidelines. The district court stated that the "preferential training" issue was an additional claim which had not been raised before the EEOC so the district court had no jurisdiction over it. We disagree with the district court's conclusion.

■ Hughes raised the issue of "preferential treatment" in response to the VA's motion as additional evidence of discrimination and to show pretext; he was not seeking additional relief by alleging the VA discriminated against males by allowing female employees to gain additional experience at the expense of males. In any event, there is a longstanding rule that a plaintiff need not file a second EEOC claim for allegations that "reasonably relate to the first and grow out of such allegations." *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 167 (7th Cir.) (en banc), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). The EEO investigated the "preferential training" issue, and the decision of the Office of General Counsel of the VA clearly refers to Hughes's allegations of "preferential train-

ing." We think that the district court was not precluded from considering the preferential training issue. And, given that the record contains admissions by the VA's Personnel Officer, Janet Harvey, that the VA's Personnel Rules provide for temporary assignments to be rotated among employees on an equal basis and that an eight-month assignment as "Acting Assistant Chief" without any rotation is unusual and constitutes preferential treatment toward the employee, we believe Hughes has met his burden of production to rebut the VA's nondiscriminatory reason for not promoting him with evidence of pretext. Thus, the district court erred in granting summary judgment in the VA's favor on Hughes's sex discrimination claim.

■ Last, Hughes claims that in issuing two disciplinary letters the VA retaliated against Hughes in violation of Title VII because Hughes filed discrimination claims against the VA. A plaintiff pursuing a retaliation claim under Title VII must first establish a prima facie case. In order to establish a prima facie case, the plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse action by his employer; and (3) there is a causal connection between the protected expression and the adverse action. *Holland v. Jefferson National Life Insurance Co.*, 883 F.2d 1307, 1313 (7th Cir.1989). In this case the district court found that Hughes failed to satisfy the third prong of his prima facie case. Hughes argues he met his burden of production by showing that the issuance of the two disciplinary letters closely followed his formal discrimination complaint. The district court disagreed, pointing out that four months elapsed between Hughes's filing and his receipt of the first disciplinary letter and that more than three years passed between the date Hughes filed his discrimination complaint and his receipt of the second disciplinary letter. We agree with the district court. The temporal proximity of Hughes's filing and the issuance of either letter, standing by itself, does not sufficiently raise the inference that Hughes's filing was the reason for the adverse ac-

tion. Hughes is required to produce such evidence if he is to defeat the VA's summary judgment motion on this issue. *See Zanders v. National Railroad Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir.1990).

### Conclusion

The judgment of the district court granting summary judgment in favor of the VA on Hughes's retaliation claim is affirmed, and the district court's judgment with respect to Hughes's race and sex discrimination claims is reversed and remanded for further proceedings.

The parties shall bear their own costs.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.