Elma J. JEAN, Plaintiff,

v.

**WALGREEN CO., Defendant.**

No. 92 C 8483.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 27, 1994.

Patricia J. Hill, Seyfarth, Shaw Fairweather & Geraldson, Chicago, IL, Emery K. Harlan, Ross & Hardies, P.C., Chicago, IL, Barbara Levine Holcomb, James Joseph Kupka, Holcomb & Holcomb, Chicago, IL, for plaintiff.

Gail Chaney Kalinich, Carol Berlin Manzoni, Laura Anne Lindner, Ross & Hardies, P.C., Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiff Elma Jean, a Haitian-born naturalized U.S. citizen, worked as a pharmacist for defendant Walgreen Co. from 1977 until she was discharged in 1991. Counts I through V of her complaint allege that Walgreen discriminated against her, harassed her, retaliated against her, and ultimately discharged her because of her national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981, as amended ("§ 1981"). Jean further claims in Count VI that her termination constitutes a retaliatory discharge in violation of public policy under Illinois statutory and common law. Defendant moves for summary judgment on all counts.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Oxman v. WLS-TV,* 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.,* 844 F.2d 470, 471 (7th Cir.1988). The movant must establish a lack of any genuine issue of material fact. *Id.* at 473. The nonmovant, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Id.* at 324, 106 S.Ct. at 2553. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Covalt v. Carey Canada, Inc.,* 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 476–77 (7th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). As the Seventh Circuit has summarized:

The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *id.* at 325, 106 S.Ct. at 2553–54 ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the nonmoving party will bear the burden of proving at trial, the non-moving party must

come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

*Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992).

A plaintiff claiming disparate treatment under Title VII must ultimately prove intentional discrimination. *Hong v. Children's Mem. Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993); *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 423–24 (7th Cir.1989). Plaintiff can satisfy that burden either with direct evidence of discrimination or through the "indirect, burden shifting method of proof articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id.* Lacking any direct proof of discrimination, Jean must rely on the *McDonnell Douglas* framework. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (interpreting *McDonnell Douglas* ).

Under the *McDonnell Douglas* framework, plaintiff must first establish some variant of a prima facie case of racial discrimination. *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ————, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993); *see United States Postal Svc. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (prima facie case never intended to be rigid, mechanized or ritualistic); *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13 (prima facie case will vary depending upon the type of case and the factual situation alleged). Establishment of the prima facie case creates a presumption which, in the absence of an explanation, would require a finding of discrimination. *Hicks,* —— U.S. at —— & n. 3, 113 S.Ct. at 2748 & n. 3. This presumption shifts the burden of production onto the employer, forcing it to articulate a legitimate, nondiscriminatory explanation for the action taken. *Id.* —— U.S. at ——, 113 S.Ct. at 2748. Once the employer satisfies this burden of production, whatever its persuasive force, the presumption of discrimination no longer exists, and all that is left is the plaintiff's ultimate burden of persuading the trier of the fact of discrimination. *Id.*

## BACKGROUND FACTS

Elma Jean began her employment with Walgreen in 1977 as an "extra board," or relief, pharmacist, filling in as needed at Walgreen stores within the Chicago area. She later moved into a "registered pharmacist" position, working exclusively at one location. At some later point, Jean served as both an assistant store manager and a store pharmacist. Walgreen promoted her to "chief pharmacist" for its Markham, Illinois store in 1981. In 1988, the title of her position changed to "pharmacy manager."

For her first ten years as chief pharmacist/pharmacy manager, Jean was supervised by Clarence Gaines. Audrey Neely replaced Gaines in January or February of 1991. On March 6, 1991, Jean attended a mandatory pharmacy manager's meeting, but was not paid for her attendance. Believing that non-Haitian pharmacy managers were paid, she filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on national origin. There is no evidence that anyone at Walgreen ever mentioned the complaint to Jean.

Walgreen pharmacies make use of a computerized inventory, ordering, and pricing system that automatically calculates employee and physician discounts. Pharmacy employees are authorized to enter drug prices manually, or override a price, only when a

drug must be specially ordered because it is unavailable from Walgreen's warehouse. In December of 1991, Neely discovered that Jean had used the override system to enter lower prices for over-the-counter children's medicine she had purchased for her son. Neely also discovered that Jean had used the override system to order drugs for Dr. Alix Charles that were available in the warehouse, but could be ordered from an outside supplier at a cheaper price. Plaintiff purchased these drugs as a gift for the relief effort in Haiti.

In her deposition, plaintiff testified that Neely gave her permission to grant a discount to Dr. Charles, even though plaintiff did not know if Charles had a discount card. Neely testified in her deposition that she told plaintiff she could not grant the discount without the card.

Neely documented her findings and sent them to Steve Kroloff, Walgreen's company lawyer. The materials were turned over to the Loss Prevention Department. Loss Prevention representatives interviewed Jean on December 24, 1991. Plaintiff does not dispute evidence presented by Walgreen that she was questioned on the propriety of her actions, particularly her purchase of drugs to send to Haiti. In the course of the interview Jean mentioned that she knew that Christina O'Heari–Enyeazu, another pharmacist at the Markham store, had ordered drugs to take to Africa. Defendant presents evidence that Jean told the investigators that O'Heari–Enyeazu did not have a prescription for these drugs; plaintiff denies that she had any knowledge of impropriety.

Loss Prevention Specialist Bennett reported this conversation to Neely. After discussing the situation with Raymond Drenon, Neely terminated Jean on December 26, 1991. O'Heari–Enyeazu, a black woman of Nigerian descent and Freeman, a black, native-born American were interviewed about the O'Heari–Enyeazu incident on January 6, 1992 and were later terminated for their participation in the O'Heari transaction. Following arbitration, pharmacist Linda Freeman was reinstated; O'Heari–Enyeazu was not.

## DISCUSSION

Plaintiff's first Title VII claim alleges that Walgreen discriminated against her because she was not paid for attending a pharmacy manager's meeting which she believes non-Haitians were paid to attend. Plaintiff's only evidence for this claim is her testimony that Doris Davis, another pharmacy manager, told Jean that several managers, including Davis, had been paid for the meeting. Absent Davis' direct testimony, however, Davis' statement is inadmissible hearsay which could not be admitted into evidence at trial. Therefore, plaintiff's claim lacks the proper evidentiary grounds to be considered. *Hong,* 993 F.2d at 1265. Plaintiff has failed to prove any disparate treatment with regard to this incident.

■ Count II of Jean's complaint alleges that Walgreen illegally terminated her because of her national origin. Under Title VII, to establish a prima facie case of national origin discrimination, Jean must show that (1) she is a member of a protected class; (2) she was doing her work well enough to meet her employer's legitimate expectations; (3) despite her satisfactory performance, she was discharged; and (4) the employer sought a replacement for her. *Hong,* 993 F.2d at 1261. Walgreen does not dispute that Jean is a member of a protected class, or that her position was filled by a non-Haitian. Walgreen argues, however, that Jean cannot establish that her performance was satisfactory prior to her termination because she was dishonest and violated company policies. Thus, to meet her initial burden, Jean must show that she was performing satisfactorily in her job at the time of her discharge. *Hong,* 993 F.2d at 1262.

A prima facie case is "not equivalent to a factual finding." *Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 512 (7th Cir.1986). It only entitles plaintiff to an inference of discrimination. *See id.* Therefore, the prima facie case is relatively simple to establish, "designed to see that plaintiff can get beyond summary judgment even though direct evidence is absent." *Pilditch v. Board of Educ. of City of Chicago,* 3 F.3d 1113, 1117 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114

S.Ct. 1065, 127 L.Ed.2d 385 (1994). Plaintiff testified that prior to her termination, she consistently received bonuses and never was reprimanded or disciplined for her performance. Defendant offers no evidence to counter plaintiff's testimony, arguing instead that the policy violations for which she was terminated show that her performance was not satisfactory. On summary judgment, a factual dispute over the nature of an employee's performance must be resolved in her favor. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1114 and n. 38 (7th Cir.1992) (plaintiff's argument that "but for" her three day absence she had performed satisfactorily created a question of material fact). Thus, Jean has met the relatively light requirements of a prima facie case.

The burden shifts to defendant Walgreen to produce evidence of a legitimate, non-discriminatory reason for terminating Jean. *Pilditch*, 3 F.3d at 1117. "This burden is also quite light; the employer need not persuade the court that he was actually motivated by the reasons he gives and the mere articulation of the reason rebuts the prima facie case and puts the onus back on the plaintiff to prove pretext." *Id.* (citations omitted). Neely, Jean's immediate supervisor, testified that Jean was fired for violating company policies relating to placing orders, taking improper discounts for herself and others, and for generally disregarding Walgreen policy.

Walgreen has offered legitimate non-discriminatory reasons for Jean's dismissal. All of the violations cited by Walgreen relate to some form of dishonesty; the most egregious not only violated the law, but potentially jeopardized Walgreen's ability to operate pharmacies. As a pharmacy manager, Jean was not only an employee, but a member of management, who was obliged to uphold Walgreen policies. Any one of these violations alone might have been grounds for dismissal.

■ Defendant has offered legitimate, non-discriminatory reasons for the discharge, and the burden of persuasion now rests with plaintiff to show that these were not the true reasons for her dismissal. *Rush*, 966 F.2d at 1117. Jean must demonstrate by a prepon-

derance of the evidence that she would not have been fired but for her national origin. *Id.*, citing *Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1304 (7th Cir.1991). Plaintiff must produce evidence from which intentional discrimination could be found. Generally, plaintiff may do this by demonstrating that (1) the employer's reasons for discharge have no basis in fact, or (2) that the employer's articulated reasons do not, in fact, motivate its decision, or (3) that the reasons given were not sufficient to motivate discharge. *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988).

■ Jean fails to produce any evidence that Walgreen's reasons for terminating her are a pretext for discrimination. Plaintiff argues that Walgreen changed its reasons for firing her over time, that Walgreen's reasons have no basis in fact, that the proffered reasons are trivial, and that Walgreen deviated from its normal personnel procedures by terminating Jean immediately. Each of these arguments fails to raise a question of material fact.

Plaintiff's assertion that Walgreen changed its story multiple times is unsupported in the record presented by both parties. Neely's testimony, as well as the Loss Prevention Report, indicate that Jean was terminated for theft and violation of company policy. Jean testified that Neely gave her no reason for the termination. The failure to state a reason, however, does not demonstrate that Walgreen's reasons changed over time. Jean asserts other reasons were given over time, but provides no evidence in support of her allegations.

Plaintiff argues that Walgreen's reasons are not grounded in fact because she did not violate company policy and had no knowledge of any illegality in relation to the O'Heari–Enyeazu transaction. Plaintiff denies that she took improper discounts, but offers no evidence to counter the figures submitted by Walgreen that show discrepancies between the prices Jean calculated and those calculated by Neely. In light of Walgreen's evidence, plaintiff's self-serving remarks standing alone are insufficient to raise doubt as to the credence of the employer's explanation

for termination. *Billups*, 922 F.2d at 1303. *See Weihaupt*, 874 F.2d at 428.

Plaintiff relies on the affidavit of Clarence Gaines, her former supervisor, to show that Walgreen's discount policy permitted her to grant professional discounts without checking to see if the customer had a discount card. Although this affidavit rebuts Neely's testimony that a discount card was always required, it does not undermine Neely's good faith belief that a discount card was required. An employer is not liable for discrimination just because someone in the company misapplies a policy and arbitrarily or erroneously dismisses an employee for violation of the policy. *Mechnig*, 864 F.2d at 1366. None of the evidence offered by Jean shows that Neely knew of any non-Haitian employees who had engaged in this practice and treated them differently. *See id.* Consequently, Gaines' affidavit does not raise a genuine issue of material fact.

Moreover, plaintiff admits that she ordered drugs for Dr. Charles from the outside supplier although she knew that at least some of the drugs were available from the Walgreen warehouse at a higher price. Neely's testimony, as well as her file memorandum dated December 27, 1991, indicate that she believed Jean's actions were wrong because they cost the company money. Thus, whether or not Jean actually violated policy is not the focus of the inquiry; instead Jean must offer evidence that Walgreen did not honestly believe that she had violated a policy. *Billups*, 922 F.2d at 1304. Before terminating Jean, Neely turned over her findings to the company lawyer. The lawyer passed the report on to Walgreen's Loss Prevention unit. An investigation occurred. Neely was assured that Walgreen terminated people for stealing candy bars. Whether or not this is true, Neely's testimony reflects that she believed that Walgreen's policy allowed her to terminate Jean, regardless of the amounts in question. Plaintiff presents no evidence that undermines Neely's good faith belief that she had violated company policies or that even small acts of dishonesty were not subject to strict discipline.

Jean's absolute denial in her affidavit of any involvement with the O'Heari–Enyeazu transaction is undermined by her previous deposition testimony in which she stated that she could not recall whether she had been involved in calculating prices. "Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir.1993). As before, however, whether or not Jean participated is not the focus of the inquiry. Defendant has produced unrefuted evidence that Jean was involved. Given the serious nature of the charge, Jean's mere denial is insufficient to show pretext.

Finally, plaintiff argues that her rapid termination is proof of pretext. But Walgreen's decision to terminate Jean immediately, rather than pursue a more extended investigation or a more moderate course of discipline is a business decision. *See Billups*, 922 F.2d at 1304. "It is not this court's practice to question an employer's good faith business decision." *Id.* Thus, unless plaintiff shows that her national origin entered into Walgreen's decision, the fact that she considers the termination unfair or a pretext does not create a material issue of fact. *Pollard v. Rea Magnet Wire, Co., Inc.*, 824 F.2d 557, 559 (7th Cir.1987). "Neither sections 1981 and 1983 nor Title VII makes an employer liable for simply erroneous or arbitrary decisions." *Friedel v. City of Madison*, 832 F.2d 965, 973 (7th Cir.1987).

Nor does plaintiff present any of the traditional evidence, such as statistics or comparable situations, that generally support claims of discriminatory conduct. *Billups*, 922 F.2d at 1305. Plaintiff's argument is further undermined by the termination of both O'Heari–Enyeazu and Freeman for their involvement with the allegedly unauthorized order. Freeman was reinstated only because of an arbitration decision. "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII and § 1981 do not interfere." *Pollard*, 824 F.2d at 560.

Plaintiff's only evidence of anti-Haitian animus is drawn from three remarks made to her during her fourteen years with Walgreen. Of those remarks, two were

made by persons who had no involvement in plaintiff's termination. The third, made by Raymond Drenon, who, as Neely's supervisor was involved in the termination decision, occurred in 1989. Evidence of a supervisor's occasional or sporadic use of a slur directed at an employee's national origin is generally insufficient to support a Title VII claim. *Hong,* 993 F.2d at 1266. This is true even when the remarks are made by a decision-maker, unless the plaintiff can show that the remark is related to the decision process. *Id.* Plaintiff shows no such connection.

Plaintiff relies upon mere allegations, conclusory statements and assertions of belief rather than admissible facts; the evidence presented does not raise a genuine dispute on the question of intentional discrimination. *Friedel,* 832 F.2d at 972. Plaintiff fails to provide any evidence from which a reasonable jury could conclude that Walgreen intentionally discriminated against her. Without such evidence, Count II of her complaint may not proceed.

█ Plaintiff's Title VII claim of retaliation fails for similar reasons. In order to demonstrate a prima facie case of retaliation, plaintiff must show that (1) she was engaged in statutorily protected expression (2) she suffered an adverse employment action and (3) there was a causal connection between the statutorily protected expression and the adverse employment action. *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1313 (7th Cir.1989).

█ Plaintiff shows no causal connection. She admits in her deposition that no one at Walgreen ever mentioned her EEOC claims to her and that her only evidence of retaliation was that her termination followed the filing of a claim. Although the timing of an adverse employment action may be evidence of intentional discrimination, Walgreen terminated plaintiff nine months after she filed her claim with the EEOC. Such a gap is insufficient to show intentional discrimination. *See Hughes v. Derwinski,* 967 F.2d 1168 (7th Cir.1992) (four-month gap between filing of administrative complaint and disciplinary letter and three year gap between filing of complaint and termination not sufficiently related to show retaliation); *Maldo-*

*nado v. Metra,* 743 F.Supp. 563, 568 (N.D.Ill. 1990) (five-month lapse between complaint and termination "is not temporally close enough to raise an inference of a causal link.").

Plaintiff attempts to bolster her claim by asserting that Walgreen, particularly Neely, plotted to jeopardize her pharmacist's license. Plaintiff cites an instance in which Neely ordered Jean to leave a continuing education seminar which both were attending because no pharmacist was on duty at the Markham store. Jean argues that it was Neely's responsibility to cover the store, especially because Jean needed the credits to maintain her pharmacy license. Once more, plaintiff focuses on a business decision without providing any evidence that the decision was related to either her EEOC claim or her national origin. It is not the court's role to sit as a super-personnel department, reexamining an employer's business decisions. *Hong,* 993 F.2d at 1262. Plaintiff fails to show any causal connection between her EEOC claim and any actions taken by Walgreen against her; thus, she fails to establish her prima facie case for retaliation.

Plaintiff's § 1981 claims are based solely on national origin. "Claims founded on that status are not cognizable under § 1981, which is designed to remedy discrimination based on race or ethnicity." *Von Zuckerstein v. Argonne Nat'l Laboratory,* 984 F.2d 1467, 1472 (7th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993). *St. Francis College v. Al-Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987). Thus, plaintiff's § 1981 claims will not be considered. Even if the § 1981 claims were considered, they would fail for lack of proof because the requisite methods of proof and elements of the case are essentially identical to those required in Title VII cases. *Id.*

All that remains is Count VI, plaintiff's state law claim of retaliatory discharge. Because all federal claims are being dismissed, jurisdiction over the state claim will be declined. 28 U.S.C. § 1367(c)(3).

Plaintiff has failed to show that genuine issues of material fact exist regarding her Title VII or § 1981 claims. No reasonable

trier of fact could conclude that plaintiff was discharged because of her national origin. For these reasons, summary judgment will be granted as to Counts I through V of plaintiff's complaint. Count VI will be dismissed without prejudice.

IT IS THEREFORE ORDERED that the motion for summary judgment of Walgreen Co. [37] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff, dismissing plaintiff's cause of action with prejudice except that the state law claim, Count VI, is dismissed without prejudice for lack of subject matter jurisdiction.