Dolores M. ENRIGHT, Plaintiff,

v.

ILLINOIS STATE POLICE, Defendant.

No. 97 C 8688.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 14, 1998.

Gerald A. Goldman, Arthur R. Ehrlich, Jonathan C. Goldman, Goldman & Ehrlich, Chicago, IL, for Dolores M. Enright, plaintiff.

Vanessa Victoria Clohessy, Hodges, Loizzi, Eisenhammer, Rodick & Kohn, Arlington Heights, IL, for Illinois State Police, defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Dolores M. Enright ("Enright") filed an action for discrimination on the basis of sex (female) and retaliation against the defendant Illinois State Police ("Defendant") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended. Enright claims defendant continually failed to promote her to the position of Master Sergeant while promoting less qualified male candidates. Defendant filed a Fed. R.Civ.P. 12(b)(6) motion to dismiss certain of Enright's claims on the ground that they are time-barred. Both parties have submitted

affidavits and other supporting documents for consideration. Therefore, defendant's motion to dismiss will be treated as one for summary judgment pursuant to Rule 56.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has demonstrated that no genuine issue of material fact exists, the non-moving party must show, by specific factual allegations, the existence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party." *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905 (7th Cir.1990). While any inferences drawn from the facts must be viewed in the light most favorable to the non-moving party, only reasonable inferences need to be drawn. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## FACTS

The following facts are uncontested: Enright was hired by Defendant on November 10, 1980. After completing her training at the police academy, Enright became an Illinois State Trooper in March 1981. On July 16, 1985, Enright was promoted to Sergeant. Between February 16, 1988, and November 13, 1993, ten officers were promoted from Sergeant to the rank of Master Sergeant. During this period, Enright consistently applied for promotion, but was denied.

Defendant promotes officers to Master Sergeant by generating a list of eligible can-

didates and promoting from that list until the promotion period is closed. On July 16, 1987, a promotional list was issued on which Enright ranked among the top ten officers. Four eligible individuals were promoted from that list before the promotion period closed on November 1, 1988. On December 1, 1988, a second promotional list was issued on which Enright was ranked among the top ten officers eligible for promotion. Three eligible officers were promoted from that list before the second promotion period closed on April 1, 1990. On December 11, 1991, a third promotional list was issued on which Enright again ranked in the top ten officers for promotion. Three eligible officers were promoted from that list before the third promotion period closed on November 13, 1993.

On December 14, 1993, Enright filed a charge of sex discrimination with the Equal Employment Opportunity Commission for failure to promote. In March and November 1996, three more people were promoted to the rank of master sergeant. Enright continued to seek and was denied promotion during this period. On April 22, 1997, Enright filed a charge of sex discrimination and retaliation with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission.

## DISCUSSION

*Statute of Limitations:*

Defendant argues that Enright's discrimination claim for conduct prior to February 18, 1993, is time-barred because Enright did not file a complaint with the EEOC until December 14, 1993. In Illinois, a charge of employment discrimination must be filed with the Illinois Department of Human Rights or the Equal Employment Opportunity Commission within 300 days of the discriminatory act. Failure to do so bars litigation over those claims. 42 U.S.C. § 2000e–5(e); *Speer v. Rand McNally & Co.*, 123 F.3d 658, 662 (7th Cir.1997); *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 707 (7th Cir. 1995). Enright concedes that the pre-February 18, 1993, claims exceed the 300 day statute of limitations, but argues that, under the

continuing violations doctrine, this conduct can be treated as part of one continuous act.

■ The continuing violation doctrine allows a plaintiff to seek relief for a time-barred act by linking it with an act that is within the limitations period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.1992). "[T]he plaintiff may not base her ... suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations." *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996); see also, *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994) ("[T]he purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred"). However, if the plaintiff knew, or "with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed" her, she must sue over the act within the relevant statute of limitations. *Jones v. Merchants National Bank & Trust Company of Indianapolis*, 42 F.3d 1054 (7th Cir.1994).

■ There are three scenarios in which the continuing violations doctrine is applicable: (1) cases where the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the 'violation' occurred; (2) cases in which the employer has an express, openly espoused policy that is alleged to be discriminatory; and (3) cases in which "the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy." *Stewart v. CPC International, Inc.*, 679 F.2d 117, 120 (7th Cir.1982). Enright argues that this third scenario, also known as the "serial violation" theory, applies to defendant's conduct.

■ The question before this court is whether, in response to defendant's motion for summary judgment, Enright has produced sufficient evidence to establish that there existed a genuine issue of fact whether the defendant's acts were "related closely enough to constitute a continuing violation" or were "merely discrete, isolated, and completed acts which must be regarded as individual violations." *Selan*, 969 F.2d at 565 (quoting *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983)). Courts consider three factors in determining whether conduct is part of a continuing violation: (1) the subject matter, (2) the frequency, and (3) the degree of permanence. *Id.* Both parties agree that the alleged acts of discrimination involve the same subject matter: namely, promotion. Enright was denied promotion during each round of promotions, therefore, the frequency requirement appears to be satisfied. The crucial factor is the whether the alleged acts of discrimination had the degree of permanence which should trigger an employee's awareness of and duty to assert her rights. *Id.*

In *Selan*, the court held that there was no genuine issue of material fact whether the defendant's actions were part of a continuing violation. *Selan*, 969 F.2d at 567. The plaintiff alleged two acts of discrimination: a transfer/demotion and then, three years later, removal of privileges. The court considered the subject matter, frequency and permanence of the alleged discrimination and found that "despite the fact that the alleged acts were similar in type, the two-year gap and the permanence of the ... transfer/demotion negates the contention that the acts were continuous or connected." *Id.*

Similarly, in *Jones*, the court found that the plaintiff's various promotion denials over a five year period did not constitute a continuing violation. *Jones*, 42 F.3d at 1058. Jones admitted that she felt, at the time she was denied promotion, that some of the defendant's refusals to promote her were discriminatory. *Id.* "In addition, each promotion was a discrete decision and each time [the plaintiff] knew, or should have known, that she had not received the promotion and another person had." *Id.*

■ Enright asserts that because there appeared to be justifiable reasons for the other promotions and defendant continued to assure her that promotion was imminent, she could not have known that discrimination was occurring until 1993 when the pattern became evident. This reasoning could apply to an indefinite series of employment decisions and effectively would eliminate the 300 day statute of limitations. Each round of promotions was a discrete, isolated and completed act. *Selan,* 969 F.2d at 565. Enright claims she was just as qualified, if not more, than the male officers who were promoted. This information was available to Enright after the first round of promotions. Moreover, Enright's contention that she failed to realize she was being discriminated against until 1993 is contradicted by the fact that she complained to other officers after each round of promotions and appears to have expressed her intent to file a formal complaint after the first round of promotions. Even with all inferences in favor of the nonmoving party, it is clear that, with the exercise of reasonable diligence, Enright would have known after each round of promotions that she had grounds to claim it was discriminatory. *Jones,* 42 F.3d 1054.

■ Alternatively, Enright argues that, even if the pre-February 18, 1993, conduct is not part of a continuing violation, defendant should be equitably estopped from relying on the statute of limitations. Equitable estoppel is appropriate where a plaintiff's untimely filing was the result of "a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Mull v. ARCO Durethene Plastics, Inc.,* 784 F.2d 284, 292 (7th Cir.1986) (quoting *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982)). An employer's attempts to lessen the adverse impact of an employment decision will not as a matter of law serve to toll the limitations period. *Id.* To have a viable equitable estoppel claim, Enright must show that defendant took "active steps to prevent the plaintiff from suing in time, ... such as by hiding evidence or promising not to plead the statute of limitations." *Speer v. Rand McNally & Co.,* 123 F.3d 658, 663 (7th Cir.1997) (quot-

ing *Thelen v. Marc's Big Boy Corp.,* 64 F.3d 264, 267 (7th Cir.1995)).

■ Enright alleges that after the first four sergeants were promoted Master Sergeant Bosco told her, "Don't get upset about not being promoted, things will work out in the long run. If you do anything about it ... you will anger upper management." After another promotion, according to Enright, Lieutenant Maurice Underwood told her, "The timing was not right for you to get promoted." In 1990, after two more sergeants were promoted to master sergeant, Enright alleges that Captain Burke wrote her to say, "What are your chances for the future? No one knows what the future openings will be, or where one will finish on the new list. I think if you are in the top ten your chances are good. Hang in there & keep sick time to a minimum. I think your time will come."

Even with all reasonable inferences drawn in favor of plaintiff, she has not provided sufficient evidence to raise a genuine issue of material fact whether defendant's conduct was improper. Not only do the alleged statements fail to meet the requirement of active steps or deliberate design, but the statements were not made by persons, nor has Enright alleged that they were made by persons, in a position to determine whether or not Enright would be promoted. The reasonable inference from Enright's allegations is that other employees were attempting to alleviate the adverse impact of passing Enright over for promotion to Master Sergeant, rather than attempting to prevent Enright from filing a charge with the EEOC. *Mull,* 784 F.2d at 292.

■ Enright's final argument that defendant has waived the statute of limitations defense is close to frivolous. Enright asserts that because defendant never claimed that the pre–1993 conduct was barred during defendant's internal investigation or the EEOC investigation, defendant has waived the statute of limitations defense at trial. Defendant is correct in stating that there is no statutory requirement, or supporting case law, that requires a defendant to raise the statute or limitations defense at the investigation stage

in order to preserve the defense at the litigation stage. Defendant is not required to inform Enright of the potential pitfalls in her case.

For the foregoing reasons, defendant's motion for summary judgment on the alleged pre–1993 violations is granted.

*Retaliation:*

■ Defendant also moves for summary judgment on Enright's retaliation claim on the ground that she cannot establish the necessary causal connection between her discrimination complaint and her lack of promotion. To show a prima facie case of retaliation, plaintiff must show that: (1) she was engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal connection between the statutorily protected expression and the adverse employment action. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir.1989). The parties agree that Enright was engaged in statutorily protected expression when she filed her EEOC complaint, 42 U.S.C. § 2000e–3(a), and that Enright suffered an adverse employment action by not being promoted during the next round of promotions after her complaint was filed. The only issue in dispute is whether Enright can establish a causal connection between her EEOC claim and defendant's failure to promote.

■ Defendant argues that there is no causal link because there is a gap of more than two years between Enright's discrimination charge and the adverse employment action. At the same time, defendant recognizes that the alleged adverse employment action occurred during the "very next round of promotions." These two position are contradictory. The fact that a new promotional list was not opened until two years after Enright filed her complaint does not create a gap of two years. The delay could just as easily indicate that defendant did not have an opportunity to retaliate until the next round of promotions. Enright alleges that when the first opportunity presented itself, defendant retaliated by denying her promotion.

Even if there was a gap between the EEOC complaint and the adverse employment action, defendant has failed to show why this warrants granting summary judgment. Defendant cites a number of cases to support its position that if enough time has passed between a plaintiff's complaint and the alleged retaliation, then the plaintiff has failed to establish the requisite causal connection. However, the cases cited all involve retaliation claims in which the plaintiff's only evidence of causation was the temporal proximity of the complaint and the adverse action. While the time elapsed between filing the complaint and retaliatory action is a factor in the court's determination, it is not dispositive. In other words, temporal proximity may be sufficient to prove a causal connection, but it is not a necessary condition for a retaliation claim.[1]

In *Jean v. Walgreen Co.*, 887 F.Supp. 1007, the Court held that a nine month gap was "insufficient to show intentional discrimination." 887 F.Supp. at 1013. It does not follow, however, that the existence of a gap necessarily destroys the causal connection. The plaintiff in *Jean* failed to show a causation in part because nine months had passed before she was terminated, and also because she admitted in a deposition that no one at her place of employment ever mentioned her EEOC claims to her. The only evidence in support of plaintiff's retaliation claim was the proximity of her termination to her complaint. For that reason, the court found the evidence insufficient to establish retaliation. Similarly, in *Hughes v. Derwinski*, 967 F.2d 1168 (7th Cir.1992), a case also cited by defendant, the court held that where there was a four month gap between plaintiff's filing and disciplinary action, "temporal proximity ·... standing by itself, does not sufficiently raise the inference that [plaintiff's]

---

1. A substantial time lapse merely "discounts" the causal connection between filing a complaint and adverse employment action. *Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1115 (7th Cir.1992). Similarly, in the context of a retaliation claim brought under the American's with Disabilities Act, the Seventh Circuit has held that the time elapsed does not preclude a plaintiff from making out a prima facie case of retaliation, but rather requires that additional proof of a causal nexus be provided. *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (1998).

filing was the reason for the adverse action." 967 F.2d at 1174.

Enright alleges that, subsequent to filing her EEOC complaint, defendant "began a program of systematically directing her immediate supervisors to lower her performance ratings ... [making] it harder for her to rate high enough to get onto the eligibility lists." In her affidavit, Enright states that, on two different occasions since 1993, her "immediate supervisors and performance evaluators have told [Enright] that they were directed by upper management to lower [her] performance ratings." (Plaintiff's Affidavit ¶ 5). These allegations, together with the fact that Enright was denied promotion during the next promotional period following her complaint, allow Plaintiff to withstand the summary judgment motion on her retaliation claim.

WHEREFORE, for the foregoing reasons, defendant's motion for summary judgment is granted in part and denied in part.